In the Matter of St. Francis Hospital, as Attorney in Fact for Joseph Lopilato, Petitioner, v Joseph A. D'Elia, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.

In the Matter of North Shore Hospital, as Attorney in Fact for Esther Dean, Petitioner, v Joseph A. D'Elia, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.

In the Matter of South Nassau Communities Hospital, as Attorney in Fact for Concepcion Dominquez, Petitioner, v Joseph A. D'Elia, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.

Second Department, November 19, 1979

## APPEARANCES OF COUNSEL

*Hayt, Hayt & Landau (Thomas S. O'Connor [Neil N. Goldman* for St. Francis Hospital only] of counsel), for petitioner in each proceeding.

*Edward G. McCabe, County Attorney (Robert O. Boyhan* of counsel; *Kathryn E. Driscoll* on the brief), for Joseph A. D'Elia, respondent.

*Robert Abrams, Attorney-General (Marion R. Buchbinder* and *George D. Zuckerman* of counsel), for Barbara Blum, respondent in first above-entitled proceeding.

*Robert Abrams, Attorney-General (Suzanne M. Lynn* and *George D. Zuckerman* of counsel), for Barbara Blum, respondent in second above-entitled proceeding.

*Robert Abrams, Attorney-General (Steven H. Schlesinger* and *George D. Zuckerman* of counsel), for Barbara Blum, respondent in third above-entitled proceeding.

### OPINION OF THE COURT

MOLLEN, P. J.

#### I—MATTER OF ST. FRANCIS HOSPITAL, AS ATTORNEY-IN-FACT FOR JOSEPH LOPILATO

For approximately two weeks in May, 1977, Joseph Lopilato was a patient at St. Francis Hospital (St. Francis). He incurred a bill of $4,794.90 and applied for medical assistance. The Nassau County Department of Social Services, however, declared him ineligible and his application was denied. He appealed the denial and, after a fair hearing which he attended along with an attorney retained by the hospital, the State Department of Social Services affirmed the determination of the local agency.

Thereafter, Lopilato executed a power of attorney to St. Francis under which the hospital has now commenced this article 78 proceeding as his attorney in fact to review and annul the determination of his ineligibility. It is alleged that the determination, *inter alia,* was arbitrary and capricious.

■ At the outset, we are confronted with the threshold issue of whether St. Francis has standing to maintain this proceeding. Respondents, relying primarily on the Court of Appeals decision in *Matter of Peninsula Gen. Nursing Home v Sugarman* (44 NY2d 909), contend that, even under a power of attorney, a provider is prohibited from bringing a CPLR article 78 proceeding to review an agency's determination, and may seek relief only by way of a plenary action. We disagree.

In *Peninsula (supra)* a voluntary not-for-profit nursing home applied for Medicaid coverage on behalf of one Jacob Stupler, a former resident at the home. The application was denied by the local agency and both the nursing home and Stupler's

family submitted requests for a fair hearing. When Stupler died prior to the scheduled date of the hearing, his family withdrew its challenge to the agency's determination. The State Department of Social Services thereupon canceled the fair hearing taking the view that the nursing home had no independent right to administrative review. The nursing home then commenced a CPLR article 78 proceeding seeking an opportunity for a fair hearing in its own right. Special Term granted the petition and ordered that the department hold a hearing. The Appellate Division, First Department, affirmed, with Mr. Justice LANE, joined by Presiding Justice MURPHY, dissenting (57 AD2d 268, 277-281). On appeal, the Court of Appeals reversed and dismissed the petition on the dissenting opinion of Justice LANE (44 NY2d 909, *supra).*

Justice LANE's dissent at the Appellate Division was based largely on the view that, because a provider of services did not come within the purview of the statutes and regulations governing administrative review, the nursing home could not claim the benefit of those provisions in challenging the determination of ineligibility. Justice LANE wrote (57 AD2d, *supra,* at pp 279-281):

"[T]he interested party within the intendment of the statute is the 'eligible,' as defined in section 366 of the Social Services Law and not the provider of services.

"A provider such as the petitioner is entitled to payment only to the extent that it has afforded goods or services to an 'eligible.' If, as in the case at bar, it develops that services have been provided to one deemed ineligible for benefits, a cause of action may be spelled out against that ineligible or even against the governmental agency designated to declare ineligibility. However, vindication of that claim, available as it is in a plenary suit, need not be afforded through the medium of administrative review. * * *

"The unilateral private financial interest of the nursing home in recovering expenditures made for services rendered creates a relationship of purchaser and seller. A breach of this relationship would give rise to a plenary suit for breach of contract".

In our view, *Peninsula* is plainly distinguishable from the case at bar. The crux of the *Peninsula* holding is that administrative review is unavailable to providers whenever they act solely in their own right with the exclusive purpose of vindicating their "unilateral private financial interest". We do not

read *Peninsula,* however, as precluding a provider's participation in the review process under all circumstances.

In the case at bar the posture of the provider's participation is significantly different. Unlike in *Peninsula,* the patient's interests here are very much at stake. The patient is alive and owes a debt to St. Francis for which he will remain responsible in the event that the finding of his ineligibility is sustained. He appeared at the fair hearing and expressed a desire to have his interests represented by the attorney retained by the hospital. Thereafter, he executed a valid power of attorney empowering St. Francis to seek, *on his behalf,* judicial review of the determination of his ineligibility. Hence, the provider's participation is not limited to the vindication of its own interests. Instead, it appears as the designated agent and representative of the patient, selected by him to defend his rights. That the interests of the patient and provider may coincide is insufficient reason to deprive the patient of the agent of his choice.

We hold, therefore, that *Peninsula* is inapposite and presents no bar to a proceeding brought by a hospital as attorney in fact for its patient.

Our decision in *Matter of North Shore Univ. Hosp. v D'Elia* (71 AD2d 991) is not to the contrary. That case turned on the fact that the power of attorney under which the hospital sought to act had been executed not by the patient but by his estranged wife after his death. Since she had not been a member of her husband's family household, she was without standing to seek administrative review of the determination of his ineligibility. (See 18 NYCRR 360.25.) Consequently, she could not grant to the hospital greater rights than she herself possessed.

In our view, then, neither *Peninsula* nor *North Shore* precludes St. Francis from maintaining the instant proceeding. Moreover, we are convinced that, under the circumstances at bar, prohibiting the hospital from seeking judicial review as attorney in fact for the patient would run counter to the language of controlling statutes and regulations and to the broad purposes underlying the Medicaid legislation.

The relevant statutes generally provide that action may be taken on the applicant's behalf by his authorized representative. Thus, for example, subdivision 1 of section 366-a of the Social Services Law provides, in pertinent part: "Any person requesting medical assistance may make application therefor

in person, *through another in his behalf* or by mail" (emphasis supplied).

Likewise, in the event of an adverse determination of the application: "Any [applicant for medical assistance] * * * *or any individual authorized to act on behalf of any such person,* may appeal to the department from decisions of social services officials or failures to make decisions [regarding applications for medical assistance]" (Social Services Law, § 22, subd 1; emphasis supplied).

Similarly, regulations of the department also permit a representative to act in the applicant's stead. The application form itself may be completed and certified by a representative (18 NYCRR 360.1 [b] [1]); a representative may review the agency's case record (18 NYCRR 358.16 [d]); he may appear at a fair hearing in place of the applicant (18 NYCRR 358.15 [a], [b]; 358.16 [c]); and he may even gain access to the confidential record of the fair hearing, including the recommendations of the hearing officer (18 NYCRR 358.17).

These provisions, which allow an applicant to rely on his chosen representative, clearly promote the declared policy of the legislation "to facilitate the application for, and the provision of * * * medical assistance" (Social Services Law, § 363). And, in our judgment, respondents have offered no convincing reason for restricting the class of authorized representatives to all but those connected with a providing institution. Nor, in the absence of contrary legislation, do we see any reason for refusing to permit an applicant to rely on an appropriately authorized representative to seek judicial review of an adverse determination.

Here, the patient has executed a valid power of attorney naming the provider as his agent to seek reversal of the denial of his application for medical assistance. In so doing, he has recruited a willing and expert representative, free of charge, to vindicate his claim for government aid. The power of attorney creates an agency relationship under which the provider is obligated to give first allegiance to the patient's interests. If the hospital is successful, the patient will be relieved of the burden of a debt he cannot afford to pay.

On the other hand, were we to bar the hospital's participation even under a valid power of attorney, the consequences to the indigent patient might be serious indeed. If he chose to seek judicial review of the agency's determination, he would have to secure independent counsel. If he chose not to chal-

lenge the determination, he would likely find himself compelled to defend in a plenary action brought against him by the hospital, his would-be agent. In addition, faced with the prospect of having to rely on the efforts of the patient alone to seek judicial review of an adverse determination or, alternatively, of having to bring a plenary suit against the indigent patient himself, hospitals might well be inclined not to extend services to persons who lack independent means to pay for their care.

We are unpersuaded that any case law, statute or public policy requires or suggests that we must help bring about these undesirable consequences by denying indigent patients the right to execute an effective power of attorney to a hospital under circumstances such as those at bar.

Accordingly, we hold that St. Francis has standing to maintain this CPLR article 78 proceeding as attorney in fact for Joseph Lopilato, and we turn to the merits of the petition.

The reason given for the denial of Lopilato's application was that he had failed to submit verification of the cash value of his life insurance policy. When he applied for medical assistance, he listed a $2,500 policy on the application form. By letter dated August 12, 1977, the Nassau County Department of Social Services requested that he submit a number of specified documents, including a letter from the insurance company verifying the cash value of the policy.

On August 31, 1977 Lopilato appeared for a face-to-face interview. He submitted various documents, but not the insurance verification. The examiner accepted the papers and requested two additional documents, a wage form and a copy of a new support order issued in connection with Lopilato's divorce. According to uncontradicted evidence at the fair hearing, Lopilato then asked the examiner if the two documents were all that remained for him to submit in connection with his application. The examiner answered in the affirmative, and Lopilato subsequently submitted the additional documents.

In a letter dated September 15, 1977, the agency notified Lopilato that his application had been denied. The letter stated that, because the insurance verification had not been submitted, the agency had been unable to determine eligibility.

Upon receiving this notification, Lopilato called the agency and offered to bring in the policy. His offer was refused. He

later produced the policy at the fair hearing, and it turned out to have a face value of only $2,000 rather than the $2,500 set forth in his original application. The available resource on the policy was $50.

■ On these facts, we hold that the determination challenged here was arbitrary and capricious. Mr. Lopilato's failure to provide the requested verification was attributable to the misleading advice given him by the local agency's examiner. Under these circumstances it was an abuse of discretion for that agency to refuse Lopilato's tender of the policy and for the State agency to affirm in view of Mr. Lopilato's presentation of the policy at the fair hearing. (See *Matter of Pell v Board of Educ.*, 34 NY2d 222.)

Accordingly, the petition should be granted to the extent that the determination should be annulled, and the matter remitted to the Nassau County Department of Social Services for a re-evaluation of Lopilato's eligibility for medical assistance.

### II—MATTER OF NORTH SHORE HOSPITAL, AS ATTORNEY IN FACT FOR ESTHER DEAN

■ North Shore Hospital has also brought its proceeding on behalf of one of its former patients, Esther Dean, pursuant to a power of attorney executed by her. For the reasons stated above, we hold that the hospital has standing to maintain the proceeding.

The local agency here requested Mrs. Dean to submit "utility bills" and "mortgage statement; property and school tax bills" by April 20, 1977. There is no indication in the agency file that Mrs. Dean ever complied with this request. On April 25, 1977 her application for medical assistance was denied upon the ground that the agency was unable to determine eligibility because of her failure to supply the requested documentation.

Instead of requesting a fair hearing, Mrs. Dean reapplied for medical assistance. On May 20, 1977 the local agency requested that on or before June 5, 1977 she supply two letters of residence from someone other than a relative, verifying the length of time she had resided at her stated address. Again, the local agency case file contains no indication that Mrs. Dean ever complied with this request and on June 6, 1977 her second application was denied.

A fair hearing was requested and an attorney for the hospital attended. He stated that on June 7, 1977 he had called the caseworker handling Mrs. Dean's application and had told her that "the information had been obtained and was on its way in the mail." The attorney did not testify as to personal knowledge of the date and circumstances of the alleged mailing, he did not present the testimony of anyone with such knowledge, and he failed to produce any copies of the letters of residence which were alleged to have been mailed.

The representative of the local agency produced the agency's file on Mrs. Dean's application. It did not contain copies of the letters of residence or any notation of a telephone call from the attorney. The representative testified concerning the office practice of the local agency, stating that even if the letters of residence had been received after the application was denied, they would have been placed in the file. She testified further that, if the caseworker had had a telephone conversation concerning these documents, that fact would have been noted in the anecdotal record kept in the file.

■ On this record, we conclude that the petitioner has not met its burden of proving that Mrs. Dean was eligible for medical assistance (see *Lavine v Milne,* 424 US 577; *Matter of Reynolds v Berger,* 54 AD2d 910). The commissioner's determination that Mrs. Dean had failed to submit timely the required proof of her eligibility, and therefore that her applications had been properly denied, is supported by substantial evidence and is neither arbitrary nor capricious.

### III—MATTER OF SOUTH NASSAU COMMUNITIES HOSPITAL, AS ATTORNEY IN FACT FOR CONCEPCION DOMINQUEZ

■ South Nassau Communities Hospital has likewise brought its proceeding on behalf of one of its former patients, Concepcion Dominquez, pursuant to her validly executed power of attorney. For the reasons previously stated, the hospital has standing to maintain the proceeding.

Petitioner's principal, Concepcion Dominquez, is a Spanish national who entered this country in 1972 on a nonimmigrant visa expiring on May 3, 1976. The proof established that on June 26, 1975, prior to the expiration of her visa, Mrs. Dominquez applied for an immigrant visa through the offices of the United States Consul General at St. John's, Newfoundland. Her application indicated that she was still residing in

the United States. In March of 1976, Mrs. Dominquez responded to a communication from the consulate requesting certain documents and the completion of certain forms. In June, 1976, after the expiration of her nonimmigrant visa, the consulate in St. John's wrote to Mrs. Dominquez at her address in the United States. She was informed that the office in St. John's was closing, that her application for a visa was being transferred to the American Consulate General in Montreal, and that delays in processing the application were due to the transfer of the file. Apparently, Mrs. Dominquez received no further communication concerning her immigrant visa application before February, 1977, when she became a patient at the hospital. Thereafter Mrs. Dominquez applied for medical assistance. Her application was denied upon the ground that she had failed to submit sufficient evidence establishing her lawful residence in the United States as required by section 131-k of the Social Services Law.

In *Matter of Papadopoulos v Shang* (67 AD2d 84, 86-88), the Appellate Division, First Department, faced with a similar denial of medical assistance to an alien, stated:

"Respondents base their denial of benefits to petitioner on subdivision 1 of section 131-k of the Social Services Law which, in pertinent part, provides that 'an alien who is unlawfully residing in the United States' shall not be eligible for medical assistance. In so doing, however, it overlooks the provisions of 45 CFR 248.50, under which the Department of Health, Education and Welfare conditioned approval of the plan. That regulation specifies that any plan must be limited to eligible persons who are citizens of the United States, aliens lawfully admitted to this country for permanent residence or otherwise *permanently residing* here under *color of law*. That regulation, in its application to the States, has the force of Federal law *(Massachusetts Gen. Hosp. v Sargent,* 397 F Supp 1056, 1061). * * *

"In construing the term 'color of law' the court *(Holley v Lavine,* 553 F2d 845, 849-850, *supra)* noted that it included 'actions not covered by specific authorizations of law. It embraces not only situations within the body of the law, but also others enfolded by a colorable imitation. "Under color of law" means that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative agency or legislative body uses the phrase "under color of

law" it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border.' With regard to the term 'permanently residing' it added, 'a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law' *(supra,* p 850)."

In our opinion Mrs. Dominquez' entry into this country on a valid nonimmigrant visa, her timely application for an immigrant visa, the correspondence with her by the consular service of the Department of State at her residence in the United States after the expiration date of her nonimmigrant visa, and the failure of the Immigration and Naturalization Service to deport her, all impel the conclusion that at the time of her admission to the hospital Mrs. Dominquez was residing in this country under color of law. Accordingly, the local agency was in error when it denied Mrs. Dominquez' application on the grounds stated, and a new determination is required.

HOPKINS, DAMIANI and TITONE, JJ., concur.

Petition [St. Francis Hospital] granted to the extent that the determination of the State Commissioner of Social Services, dated November 15, 1977, is annulled, on the law, without costs or disbursements, and the matter is remitted to the local agency for further proceedings in accordance with the opinion herein.

Determination of the State Commissioner of Social Services [North Shore Hospital], dated October 31, 1977, confirmed and proceeding dismissed on the merits, without costs or disbursements.

Petition [South Nassau Communities Hospital] granted to the extent that the determination of the State Commissioner of Social Services, dated November 22, 1977, is annulled, on the law, without costs or disbursements, and the matter is remitted to the local agency for a new determination in accordance with the opinion herein.