In the Matter of the EPISCOPAL CHURCH HOME OF WESTERN NEW YORK et al., Appellants, v PHILIP L. TOIA, as Commissioner of the Department of Social Services of the State of New York, et al., Respondents.

Fourth Department, July 9, 1981

APPEARANCES OF COUNSEL

*Phillips, Lytle, Hitchcock, Blaine & Huber (Mark J. Moretti* of counsel), for appellants.

*Robert Abrams, Attorney-General (Peter J. Todoro* and *Alan W. Rubenstein* of counsel), for Philip L. Toia and another, respondents.

*Robert E. Casey, Jr. (Howard B. Frank* of counsel), for Barry L. Van Lare, respondent.

OPINION OF THE COURT

DILLON, P. J.

At the threshold of this appeal requiring construction of a support and maintenance contract is the question of whether petitioners have standing to bring a CPLR article 78 proceeding to review and annul an administrative determination discontinuing medical assistance for the reason that petitioners contracted to furnish life care to applicants for medical assistance.[1] We hold that petitioners have standing, and as to the merits, upon our finding that petitioners are separate corporate entities, we hold that the contract did not require petitioner Episcopal Church Home of Western New York (Church Home) to provide life care to other than its own residents.

The Church Home is a not-for-profit corporation which operates a home for the well-aged. Petitioner 24 Rhode Island Street Nursing Home, Inc. (Nursing Home) was incorporated under the Not-For-Profit Corporation Law and the Public Health Law, and operates a nursing home.

In 1958, Mrs. Edith Drullard and Miss Cora Lee Georgia, then septuagenarians, took up residence in the Church Home and each assigned her meager assets as an admission fee.[2] Upon her entry into the Church Home, each was promised by written agreement that she would be furnished support and maintenance "within the Church Home only". The agreements also reserved to the Church Home the right of termination at any time upon a violation of its by-laws, and provided that in the event of termination the Church Home would refund such part of the admission fee as had not been expended for care and maintenance.

Both women began receiving Medicaid assistance in 1969. Their attending physician determined in December 1975 that their respective medical conditions required a level of care which only the skilled staff of a nursing facility could provide. As a result of that determination, they were

---

1. The issue is thus framed in light of respondents' argument that each petitioner is the alter ego of the other.

2. Mrs. Drullard delivered $1,000 to the Church Home and assigned Social Security checks in the sum of $78.80 per month; Miss Georgia also delivered $1,000 to the Church Home and assigned eight shares of AT&T stock.

transferred from the Church Home to the Nursing Home on December 19, 1975. On admission, each made application for Medicaid payment for nursing home care. In April, 1976 the local agency determined that medical assistance should be discontinued for the reason that each had a "lifetime contract for care with Episcopal Church Home".

Pursuant to requests for fair hearings filed by the administrator of the Nursing Home, a joint fair hearing was held on June 21, 1976.[3] The corporate petitioners appeared and were represented by counsel.[4] Mrs. Drullard and Miss Georgia were represented by separate counsel. The decisions after fair hearing as to each applicant affirmed the local agency's determination. Both Mrs. Drullard and Miss Georgia died prior to the institution of this article 78 proceeding in February, 1977.

Special Term held that petitioners had requisite standing but dismissed the petition on the basis that the contracts required the Church Home to provide life care.

In support of their argument that petitioners are not interested parties and thus have no standing to challenge these administrative determinations, respondents rely upon *Matter of St. Francis Hosp. v D'Elia* (53 NY2d 825, affg 71 AD2d 110), *Matter of Peninsula Gen. Nursing Home v Sugarman* (44 NY2d 909, revg 57 AD2d 268) and *Matter of Wood v Fahey* (62 AD2d 86).[5] Read together, those cases articulate or reaffirm the principle that a provider of health care services is not entitled to administrative review of a local agency's determination of ineligibility whenever it acts in its own right with the exclusive purpose of vin-

3. The tape recorder used at the fair hearing malfunctioned and no transcript was ever made. We accept the implicit agreement of the parties that the transcript is unnecessary to resolution of the issues under consideration.

4. Despite respondent Toia's denial of petitioners' allegation that they were represented at the fair hearing, his decision in each proceeding states that: "representatives of the nursing home appeared". Significantly, respondent Van Lare admits that petitioners were represented at the fair hearing. The record thus supports our finding that petitioners appeared at the hearing. Moreover, no claim is made that objection was interposed to their participation.

5. We note that in none of the cases relied upon by respondents did the provider appear as a party at the fair hearing. Thus the question was not presented as to whether a provider, having appeared and fully participated, without objection, in the fair hearing, should be denied standing to pursue an article 78 proceeding to review the administrative determination.

dicating its unilateral private financial interest (see *Matter of St. Francis Hosp. v D'Elia,* 71 AD2d 110, 113, *supra).*

Whether cases applying that principle are controlling precedent here, however, necessarily depends upon analysis in each case of the underlying issue upon which the determination of ineligibility was based. As Presiding Justice MOLLEN perceptively noted in *Matter of St. Francis Hosp. (supra,* p 114) the principle should not work to preclude a provider's participation in the review process "under all circumstances".

To the extent then that the decision in *Matter of St. Francis Hosp. (supra)* is supportive of respondents' position, it must be weighed in relation to the applicant's failure in that case to have submitted verification of the cash surrender value of a life insurance policy as the basis for the determination of ineligibility.

In *Matter of Peninsula Gen. Nursing Home v Sugarman* (44 NY2d 909, revg 57 AD2d 268, *supra),* which held that a provider did not have standing to bring an article 78 proceeding seeking to compel a fair hearing after the applicant for medical assistance had died and the applicant's family had declined to challenge the local agency's determination, the basis for the ineligibility determination was that the applicant had transferred a resource for the purpose of qualifying for assistance.

Similarly, in *Matter of Wood v Fahey* (62 AD2d 86, *supra),* which also denied standing, the underlying basis for the local agency's determination was the impermissible transfer of a resource.

It is clear, therefore, that the determination of ineligibility in each of those cases was based wholly upon the act or omission of the applicant for assistance and bore no relation to the provider's contractual liability to the applicant. While we acknowledge adherence to the rule that a provider qua provider has no right to administrative review of a determination of ineligibility, minimal due process considerations dictate that it not be applied in a case involving a sweeping determination of the contractual rights and responsibilities of one other than the applicant for medical assistance. Since petitioners would not be bound by respondents' determinations had they not appeared and par-

ticipated in the administrative proceedings, their presence at the fair hearing was essential to resolution of the primary issue presented.

Policy considerations support that finding. A holding that petitioners had no right to be present at the fair hearing could have the effect, if not here, then certainly in future cases, of requiring a patient applicant either to bring suit under the contract or to defend claims for payment for health care services rendered. Such a result would do violence to the purpose and intent of both the Social Security Act and the Social Services Law (see *Matter of St. Francis Hosp. v D'Elia*, 71 AD2d 110, 115-116, *supra*).

Finally, in light of the *sui generis* nature of the issue presented here, we perceive that the grant of standing will have but minimal impact upon the otherwise sound policy considerations recounted in *Matter of Wood v Fahey* (62 AD2d 86, 91, *supra*).

We thus conclude, consistent with our result in *Matter of Wheel Chair Home v Buscaglia* (64 AD2d 830, affd 48 NY2d 748), that petitioners are interested parties and have standing to bring this proceeding.

Resolution of the merits first requires a determination of whether each corporate petitioner is the alter ego of the other. Respondents' theory is that petitioners are as one and that the Church Home's promise of life care is the Nursing Home's promise of life care. Although Special Term found that both petitioners are affiliated with the Episcopal Diocese of Western New York, and the same person serves as secretary of each corporation, there is no other evidence which would support respondents' argument.

The theory is further faulted in view of the essential character of each corporation under the applicable laws of the State. While both corporations were organized under the Not-For-Profit Corporation Law, the Nursing Home, in order to function as a provider of health care services, was also organized under the Public Health Law and is bound by its provisions (see Public Health Law, § 2853, subd 1, par d). As presently constituted, the Church Home may not lawfully be a provider. Moreover, the Church Home functioned for many years before the Nursing Home came

into being. It is convincingly established, therefore, that petitioners are separate, distinct and independent corporations.

Respondents nonetheless argue that under the contract documents the Church Home promised life care to Mrs. Drullard and Miss Georgia regardless of circumstances, and is therefore liable to the Nursing Home for their health care expenses. We will not adopt such a construction because to do so would require deletion of the clause in each document which limits the Church Home's responsibility to "support and maintenance within the Church Home only". The clause is a clear expression of the intention of the parties to each agreement. The Church Home abided by its agreements for many years until it was determined that the two women required care and services that could not be provided "within the Church Home". At that point there was no alternative but to transfer them to an appropriate health care facility (see 18 NYCRR 487.3[b] [2], formerly 18 NYCRR 15.6[b]).

By reason of the foregoing, the judgment should be reversed and the petition should be granted.

SIMONS, HANCOCK, JR., and DOERR, JJ., concur.

Judgment unanimously reversed, with costs, and petition granted.