Argued and submitted June 24, 1983, reversed January 18, 1984

# RUBIO,
## *Petitioner,*

*v.*

# EMPLOYMENT DIVISION,
## *Respondent.*

## (82-AB-2053; CA A26813)

674 P2d 1201

Steven N. Thomas, Pendleton, argued the cause and filed the brief for petitioner.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant is a Mexican national who received unemployment compensation after the termination of his employment in Hermiston. After a hearing the referee issued a reimbursement order, holding that claimant was not entitled to benefits and requiring him to repay the overpayment from future benefits. The referee found that, because claimant was not legally authorized to work in the United States until July 20, 1981, his earnings in 1981 before that date could not be considered in determining his benefits. The Employment Appeals Board (EAB) affirmed the referee, one member dissenting. Claimant seeks judicial review. We hold that EAB misconstrued the applicable law and therefore reverse.

Claimant began working for Lamb-Weston in 1979. At that time, he was in this country illegally; he apparently had used false identification to obtain the job. In June, 1980, he married an American citizen. His wife filed an application on his behalf for permanent residence in October, 1980. On December 22, 1980, the Immigration and Naturalization Service (INS) notified her that it had approved her petition and had forwarded it to the United States Consulate in Vancouver, British Columbia, for action by the Department of State. At the same time, INS issued claimant a Form I-210, granting him three months to depart voluntarily from the country. It renewed that grant every three months thereafter until he received permanent resident status on March 22, 1982. INS first authorized claimant to work in the United States in the renewal dated July 20, 1981.

Claimant's attorney testified that normal INS practice is to issue a Form I-210 to persons in claimant's situation and that the agency normally renews the permission so long as the application for permanent residence remains pending. Inasmuch as INS sent the form to claimant at his address in Hermiston, it evidently knew that he was in the United States throughout this period and had no intention of initiating deportation proceedings against him.[1]

---

[1] The facts given in this paragraph come partly from the referee's findings, affirmed by EAB, and partly from the record. None of the facts beyond those the referee found is disputed or is inconsistent with the referee's findings. The referee did not find all the facts we describe, because his view of the law did not require him to do so.

■       The controlling statute is ORS 657.184, which provides:

> "Benefits shall not be paid on the basis of services performed by an alien unless such alien is an individual who has been lawfully admitted to the United States for permanent residence or to perform such services, *or otherwise is permanently residing in the United States under color of law,* including an alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act." (Emphasis supplied.)[2]

This statutory test for disqualification of an alien from unemployment benefits is identical to 26 USC § 3304(a)(14)(A); the legislature adopted ORS 657.184 as a condition for continued federal approval of Oregon's unemployment compensation laws. 26 USC § 3304(a). The construction of the Oregon law must therefore be consistent with federal law. *See Holley v. Lavine,* 553 F2d 845 (2d Cir 1977), *cert denied sub nom Shang v. Holley,* 435 US 947 (1978) (when state adoption of a certain federal standard is a condition of continued approval of its program, that standard controls even if the state standard actually adopted is different); *cf. U. of O. Co-Oper. v. Dept. of Rev.,* 273 Or 539, 542 P2d 900 (1975) (when Oregon copies a federal statute, the Oregon courts will usually adopt the interpretation given the federal act by the federal courts). Claimant does not argue that at the times in issue he had been lawfully admitted for permanent residence or to perform the services involved. Rather, he claims that he was "permanently residing in the United States under color of law."

      The only federal case of which we are aware which considers the meaning of "permanently residing in the United States under color of law" is *Holley v. Lavine, supra,* where the plaintiff was a deportable Canadian citizen with six United States citizen children. New York state denied her the parental portion of her Aid to Families with Dependent Children grant. INS had determined, apparently for humanitarian

---

[2] The referee quoted ORS 657.184 in his decision as covering aliens "lawfully admitted to the United States * * * to perform such services * * * under color of law * * *." By his omissions he gave the statute a different meaning from that which Congress or the legislature gave it and focused his attention on the wrong issues.

reasons, not to initiate deportation proceedings against her, at least until the children were grown. The controlling regulation used the phrase in question to describe who was eligible for AFDC benefits. The Second Circuit pointed out that "under color of law" is not limited to actions covered by specific authorizations. It includes situations not only within the body of the law but also those within it by a colorable imitation. What an official does by virtue of power as well as by virtue of right is done under color of law, including when the official exercises a discretion not to enforce the law. Thus, the plaintiff's residence in the United States was under color of law because INS knew of it and permitted it to continue. 553 F2d at 849-50.

The *Holley* court also held that the plaintiff was permanently residing in the United States. Under § 101(a)(3) of the Immigration and Nationality Act, 8 USC § 1101(a)(3), "permanent" means a relationship of a continuing or lasting nature, even though it may eventually be dissolved at the instance of either the United States or the individual. That definition fitted the plaintiff's situation; her residency was guaranteed until the children were grown and was highly likely to continue thereafter. The court therefore held her entitled to AFDC benefits. 553 F2d at 851. Two New York state appellate courts followed the reasoning in *Holley* in construing identical language in other federal regulations and allowed benefits to aliens whose status was not yet finally determined and who might in fact have been deportable. *See St. Francis Hospital v. D'Elia,* 71 App Div 2d 110, 422 NYS 2d 104 (1979), *aff'd* 53 NY 2d 827, 422 NE2d 830, 440 NYS 2d 185 (1981); *Papadopoulous v. Shang,* 67 App Div 2d 84, 414 NYS 2d 152 (1979).

Although *Holley* is not, strictly speaking, binding on this court, it is the only federal case to construe "permanently residing in the United States under color of law," and we find its reasoning persuasive as applied to the facts in our case. Under that reasoning, claimant was permanently residing in the United States during all of 1981. He was married to a United States citizen, working for a United States business and had begun the necessary steps to achieve a legal permanent residence. His residence was also under "color of law" because INS knew of it and, by its routine regular extensions of his voluntary departure, had acquiesced in it. At the least,

INS exercised its discretion not to enforce the law; more accurately, it knowingly maintained the status quo pending the outcome of claimant's application for permanent residence.

The test in this case is not whether claimant was legally entitled to work but whether he was permanently residing in this country under color of law. He has met that test, and EAB's decision denying him benefits was erroneous as a matter of law. ORS 183.482(8)(a)(A).

Reversed.