**Baltazar ANTILLON, Plaintiff,**

**v.**

**DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 19338.**

Supreme Court of Utah.

June 6, 1984.

---

**1.** Quoted with approval more recently in *Jensen v. Jensen*, Utah, 660 P.2d 240 (1983).

Cecelia M. Espenoza, Salt Lake City, for plaintiff.

Floyd G. Astin, K. Allan Zabel, Salt Lake City, for defendant.

HALL, Chief Justice:

Plaintiff Baltazar Antillon brought this action to review an action of the Board of Review of the Industrial Commission. The Commission found Antillon had knowingly withheld material information on his alien status from his unemployment claims in order to obtain benefits to which he was not entitled.[1]  We reverse.

Antillon is a citizen of Mexico who has resided in the United States since 1971, leaving the country only for short "vacations" in Mexico.  Antillon entered the United States, both initially and after each "vacation," illegally, "jumping the fence" near El Paso, Texas.

Antillon had worked for at least four different employers in Utah since 1971 and had never applied for or received unemployment benefits.  In July, 1978, he began working for the Price River Coal Company where he worked with periodic layoffs until 1982. ' Beginning in 1981, Antillon applied for unemployment benefits after each layoff.  He received benefits for four weeks in January, 1981, two weeks in July, 1982, and from October 25 through December 25, 1982.

The Commission contends that Antillon was ineligible to receive those benefits under U.C.A., 1953, § 35–4–5(k), which provides:

An individual is ineligible for benefits or for purposes of establishing a waiting period:

(k)(1) For any week in which the benefits are based upon services performed by an alien, unless the alien is an individual who has been lawfully admitted for permanent residence at the time the services were performed, was lawfully present for purposes of performing the services or, was *permanently residing in the United States under color of law* at the time the services were performed, including an alien who is lawfully present in the United States as a result of the application of the provisions of subsection 203(a)(7) or subsection 212(d)(5) of the Immigration and Nationality Act. [Emphasis added.]

▪ The appeal referee and the Board of Review found that Antillon was not entitled to unemployment benefits since he was an alien who was in this country illegally

---

1. In violation of U.C.A., 1953, § 35–4–5(e).

and without a work permit. Antillon does not deny that he had not been lawfully admitted for permanent residence in the United States. He also admits he had no work authorization permit. Antillon, however, contends that he was entitled to those unemployment benefits since he was in the United States "under color of law." [2] Antillon bases his contention on the following facts.

In July, 1980, on a brief vacation to Mexico, Antillon filed papers to become a permanent resident of the United States with the American consul in Chilaualua, Mexico. That application and accompanying records were later transferred to Salt Lake City, Utah, the closest Immigration and Naturalization Service (INS) office to Antillon's home address. On January 30, 1981, not having heard anything concerning his application from the INS, Antillon went to the Salt Lake City INS office to attempt to clear up his status. Following Antillon's query, the INS issued Antillon a form I-210, granting him one month to depart from the country voluntarily. This voluntary departure notice was sent to Antillon's address in Price, Utah. On the same date, form I-994, placing Antillon under docket control of the Salt Lake City INS office, was filed listing Antillon's address in Price, Utah. The INS took no further action, and Antillon did not leave the country. On August 4, 1981, Antillon paid the $75 fee to file an application for suspension of deportation. The application was filed in September, 1981, stating that Antillon was eligible for suspension of deportation because such deportation would result in extreme hardship to Antillon and his child, who is an American citizen. No further action was taken by the INS until a year later when an order to show cause why Antillon should

not be deported dated September 10, 1982, was sent to his home address in Price. The order to show cause stated that Antillon was required to appear for a hearing before an immigration judge at a date to be determined. No hearing date was ever set, no hearing has yet been held, and no further action has been taken by the INS on Antillon's application for suspension of deportation or on his application for permanent residency. Antillon still remains in Utah.

Section 35-4-5(k), which sets out the categories of aliens eligible to receive unemployment benefits, is virtually identical to 26 U.S.C. § 3304(a)(14)(A). The Utah legislature adopted § 35-4-5(k) as a condition of continued federal approval of Utah's unemployment compensation laws. 26 U.S.C. § 3304(a).

■ Under those circumstances, the construction placed on the federal statute is persuasive authority in construing Utah's statute,[3] and the construction of Utah's statute must be consistent with federal law.[4]

Only one federal case, *Holley v. Lavine*,[5] has construed the meaning of "permanently residing in the United States under color of law." In that case, the plaintiff was a deportable Canadian citizen with six children who were United States citizens. The INS had apparently decided not to initiate deportation proceedings against her, at least until her children were grown. New York State, ruling that the plaintiff was an alien unlawfully residing in the United States and thus not eligible for aid to dependent children, cut off the parental portion of her Aid to Families with Dependent Children grant. The Second Circuit reversed and held that "under the color of

---

2. Neither the appeal referee nor the Board addressed the question of whether Antillon was here under color of law even though it was raised by Antillon to both. Therefore, as with most questions of statutory construction, our review is plenary. *See Salt Lake City Corp. v. Dep't of Employment Security*, Utah, 657 P.2d 1312 (1982).

3. *See, e.g., Bennett Assoc. v. Tax Comm'n*, 19 Utah 2d 108, 426 P.2d 812 (1967); *State v. Hunt*, 13 Utah 2d 32, 368 P.2d 261 (1962).

4. *See Holley v. Lavine*, 553 F.2d 845 (2d Cir. 1977), *cert. denied sub nom, Shang v. Holley*, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978).

5. *Id.*

law" included actions not covered by specific authorizations of law and meant "that which an official does by virtue of power, as well as what he does by virtue of right."[6] The court went on to say that "[t]here is no more common instance of action 'under color of law' than the determination of an official charged with enforcement of law that he, as a matter of public policy, will exercise his discretion not to enforce the letter of a statute or regulation...."[7]

The Second Circuit also held that Holley was "permanently residing" in the United States since the INS was not enforcing her departure from the United States at that time. The court said that "permanent" should be construed in light of 8 U.S.C. § 1101(a)(31) of the Immigration and Nationality Act, which provides that "[t]he term 'permanent' means a relationship of continuing or lasting nature ... even though it is one that may be dissolved eventually at the instance either of the United States or of the individual...."[8]

Two New York state appellate courts followed the reasoning in *Holley*. In *Papadopoulos v. Shang*,[9] the petitioner was a Greek citizen whose application for a change of status from visitor to permanent resident had been denied and review was pending. She had applied for Medicaid benefits that had been denied based on her status as an alien illegally or unlawfully residing in the United States. Construing 45 C.F.R. § 248.50, which had language identical to the regulation construed in *Holley*, the New York court held that Papadopoulos was in the United States under color of law since there was pending an application for adjustment of status and since the INS had not taken steps to effect her deportation.

Similarly, in *St. Francis Hospital v. D'Elia*,[10] the petitioner, a Spanish national whose nonimmigrant visa had expired and whose application for immigrant status was pending, applied for medical assistance. The New York appellate court ruled that the petitioner was residing in the United States under color of law since she had entered this country on a valid visa, had applied for an immigrant visa, had received correspondence from the Department of State at her residence after expiration of her visa and had not been deported by the INS.

The Commission contends that these cases are distinguishable from the case at hand, reasoning that in all of the above cases, the petitioners had initially entered the country legally, while Antillon had not. While there is little doubt that Antillon would have a stronger case had he entered the country legally, this does not bar him from currently residing here under color of law. The test in this case is not whether Antillon initially entered this country illegally or whether he was legally entitled to work, but whether he was here under color of law at the time he applied for unemployment benefits. Therefore, the circumstances that govern the outcome of this case are those that were operative at the time Antillon applied for unemployment benefits.

In *Rubio v. Employment Division*,[11] the Oregon court of appeals held that the claimant, a Mexican national who had entered this country illegally and who had used false identification to obtain his job, was in the United States under color of law at the time he applied for unemployment benefits. In *Rubio*, the claimant had applied for unemployment benefits and had been issued a form I-210 giving him three months to depart voluntarily from the country, which he did not do. The court said that since the INS had sent the form to Rubio at his home address it knew Rubio was in the United States and had no inten-

---

6. *Id.* at 849.

7. *Id.* at 850.

8. *Id.*

9. 67 A.D.2d 84, 414 N.Y.S.2d 152 (1979).

10. 71 A.D.2d 110, 422 N.Y.S.2d 104 (1979), *aff'd*, 53 N.Y.2d 825, 422 N.E.2d 830, 440 N.Y.S.2d 185.

11. 66 Or.App. 525, 674 P.2d 1201 (1984).

tion of deporting him. The Oregon court concluded that Rubio's residence was under color of law because the "INS knew of it and, by its routine regular extensions of his voluntary departure, had acquiesced in it. At the least, INS exercised its discretion not to enforce the law; more accurately, it knowingly maintained the status quo pending the outcome of claimant's application for permanent residence." [12]

■ That reasoning, based on the Second Circuit's reasoning in *Holley*, applies as well in the case before us. Antillon applied for permanent residence in July, 1980. At the time he applied for unemployment benefits in 1981 and 1982, the INS knew he was in the United States (since he was under docket control), knew where he was living (forms and notices were sent to that address) and took no action to deport him or to act on his application for immigrant status. Antillon's residence was therefore under color of law because the INS knew of it and acquiesced in it by exercising its discretion not to enforce the law.

The holding of the Industrial Commission is therefore reversed.

STEWART, HOWE and DURHAM, JJ., and J. DENNIS FREDERICK, District Judge, concur.

OAKS, J., having resigned, does not participate herein; FREDERICK, District Judge, sat.

12. *Id.* at 529–30, 674 P.2d at 1203.