**Hismael ALVARADO, Plaintiff,**

v.

**BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

**No. 21065.**

Supreme Court of Utah.

April 3, 1987.

Waine Riches, Bruce Plenk, Sandy, for plaintiff.

K. Allan Zabel, Salt Lake City, for defendant.

HALL, Chief Justice:

Plaintiff Hismael Alvarado seeks reversal of an order of the Industrial Commission. The Commission found him ineligible to receive unemployment compensation benefits since he was not an alien "permanently residing in the United States under color of law." We affirm.

Alvarado is a citizen of Mexico who has resided in the United States since 1969, leaving this country for only a brief period to return to Mexico. Alvarado entered the United States illegally, both initially and upon returning from Mexico.

On September 17, 1982, Alvarado was arrested in Payson, Utah, by the Immigration and Naturalization Service (INS), placed under docket control, and released on a $1,000 bond. Also on the day of his arrest, Alvarado was issued an order to show cause why he should not be deported from the United States. A hearing on this order was held approximately three or four months later.

In February 1983, Alvarado filed an application for suspension of deportation. During that month, he also requested authorization to engage in employment while waiting for his deportation hearing. The INS never granted Alvarado authorization to work. Nevertheless, in January 1984, Alvarado began working as a miner for Mine Shaft and Tunnel Corporation, where he worked until he was laid off in December of that year. He then filed for unemployment compensation effective January 6, 1985.

The Board of Review found that Alvarado was not entitled to unemployment benefits since he was not "permanently residing under color of law," since he did not have the INS's authorization to work, and since "legal availability" for work is a prerequisite to unemployment compensation eligibility.

The Commission contends that Alvarado was ineligible to receive benefits under U.C.A., 1953, § 35–4–5(k)(1) (Repl.Vol. 4B, 1974 ed., Supp.1986), which provides:

> An individual is ineligible for benefits or for purposes of establishing a waiting period:
>
> . . . .
>
> (k)(1) For any week in which the benefits are based upon services performed by an alien, unless the alien is an individual who has been lawfully admitted for permanent residence at the time the services were performed, was lawfully present for purposes of performing the services or, was *permanently residing in the United States under color of law at the time the services were performed,* including an alien who is lawfully present in the United States as a result of the application of Subsection 203(a)(7) or Subsection 212(d)(5) of the Immigration and Nationality Act.

(Emphasis added.)

 Alvarado does not deny that he was in this country illegally and that he did not have a work permit. However, Alvarado argues that his case is indistinguishable from *Antillon v. Department of Employ-*

*ment Security* [1] and that therefore he was entitled to unemployment benefits since he was "permanently residing in the United States under color of law." Alvarado bases his contention upon the following claims.

First, plaintiff alleges that in 1981 he contacted a lawyer in El Paso, Texas, to apply "for a permit" to remain in the United States. The lawyer drafted a letter addressed to the INS in Denver, Colorado, requesting issuance of a docket control permit or, in the alternative, a hearing to apply for suspension of deportation. Second, after he was arrested, Alvarado kept the INS apprised of his address and appeared at all scheduled hearings. Third, Alvarado claims that prior to his application for unemployment compensation benefits, no adjudicative hearing on his immigration status was held. Finally, Alvarado contends he obtained residency under "color of law" since he was entitled to a hearing on his application for suspension of deportation and, accordingly, was "either allowed by INS or lawfully permitted to remain here [pending his hearing] by statute or regulation."

The instant case is distinguishable from our decision in *Antillon.* In *Antillon,* the plaintiff actually filed papers with the American Consul in Mexico to become a permanent resident of the United States. That application and accompanying records were later transferred to the INS office in Salt Lake City, Utah. Additionally, in January 1981, Antillon voluntarily approached the INS to determine his status. Thus, the INS knew of Antillon's presence. Thereafter, he was sent a (one-month) voluntary departure notice, at which time he was placed under docket control. The INS took no further action and Antillon did not leave the country. Eight months later, Antillon applied for suspension of deportation. Approximately one year later, the INS issued an order to show cause why Antillon should not be deported, but a hearing date on this order was never set. This Court further noted that a hearing was never held and that the INS had taken no further action, even as of the date of the decision in

1. 688 P.2d 455 (Utah 1984).

*Antillon,* approximately three years after he applied for suspension of deportation.[2] Accordingly, we applied the reasoning of the federal court in *Holley v. Lavine*[3] and held that Antillon's residence was under "color of law" because the INS knew of his continued presence and acquiesced in it by exercising its discretion not to enforce the law.[4]

Contrastingly, there is no evidence in the record indicating that Alvarado's presence in the United States was brought to the attention of the INS prior to his arrest on September 16, 1982. Indeed, the INS has no record of any correspondence from Alvarado or his attorney in its files. Instead, the INS first learned of plaintiff's presence and residence when it conducted a "sweep operation" in Payson, Utah, wherein Alvarado was arrested. Plaintiff's claim that, as in *Antillon,* he voluntarily contacted and notified the INS of his presence in the United States is not supported by the record.

Moreover, the record supports the determination that the INS has continued to make all proper and concerted efforts to enforce the law and deport Alvarado. To this end, Alvarado was arrested, and an initial hearing was held on the order to show cause.[5] Additionally, a preliminary hearing concerning Alvarado's application for suspension of deportation was held on February 11, 1985.[6] The purpose of this hearing was apparently to verify the location of illegal aliens subject to deportation. Alvarado's final immigration hearing was held on April 16, 1985, at which time the immigration judge determined that Alvarado was a deportable alien and granted his request for voluntary departure on or before August 16, 1985.

Furthermore, contrary to the facts in *Antillon,* the INS did not issue Alvarado "routine regular extensions of voluntary departure";[7] the INS had every intention of deporting Alvarado;[8] and in fact it continued to take steps to effect his deportation.[9] Thus, the record does not support a finding that the INS took no action to deport Alvarado in the instant case or otherwise exercised its discretion not to enforce the law. Therefore, the ruling in *Antillon* does not apply.

■ Finally, we disagree with Alvarado's claim that he was residing under color of law because adjudication of his application for suspension of deportation was pending. Adoption of Alvarado's position would seriously erode the State's ability to deal with the problem of illegal aliens and unemployment compensation. It would permit any alien, without regard to the legality of his entry, to obtain a job and, by merely filing an application for suspension of deportation, claim that his residence was under color of law and that he was therefore entitled to unemployment benefits. There is no evidence that such individuals were intended to be beneficiaries of the unemployment compensation benefits program.[10] Accordingly, under the rationale

2. *Id.* at 457.

3. 553 F.2d 845 (2d Cir.1977), *cert. denied sub nom. Shang v. Holley,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978).

4. 688 P.2d at 459.

5. The arrest and initial hearing contradict Alvarado's claim that the INS took no action to deport him prior to his application for benefits.

6. Testimony indicated that the delay from the time of Alvarado's application for suspension to the time of the hearing thereon is customary and based on the backlogged calendar of the immigration judges.

7. 688 P.2d at 459 (quoting *Rubio v. Employment Div.,* 66 Or.App. 525, 674 P.2d 1201, 1203 (1984)).

8. *See Antillon,* 688 P.2d at 458–59.

9. *See id.* at 459. *See also Holley,* 553 F.2d at 850.

10. *See Esparza v. Valdez,* 612 F.Supp. 241, 244 (D.Colo.1985). Petitioners mistakenly rely upon *Antillon* and *Valdez, supra,* for the proposition that aliens can be permanently residing in the United States under color of law if there is an "adjudicative proceeding" which prohibits action by the INS. The mere existence of an adjudicative proceeding does not establish residency under color of law. Rather, as explicitly pronounced in *Valdez:*

 [The phrase permanently residing in the United States under color of law] makes eligible those aliens who, *after review* of their particular factual circumstances pursuant to a specif-

in *Antillon* and *Holley,* Alvarado was not permanently residing in the United States under color of law at the time the services were performed.

Because of the resolution which we make of the foregoing issue, we need not reach the issue raised by the Industrial Commission of whether under U.C.A., 1953, § 35–4–4(c) (Repl.Vol. 4B, 1974 ed., Supp.1986), Alvarado need be and was legally available for work at the time he claimed unemployment benefits.[11]

The decision of the Industrial Commission is affirmed.

STEWART, Associate C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

---

ic statutory or regulatory procedure, have been *granted* an immigration status which allows them to remain in the United States for an indefinite period of time.
*Id.* at 244 (emphasis added).

**11.** *Cf. Specialty Cabinet Co., Inc. v. Montoya,* 734 P.2d 437, 440 (Utah 1986) (decision in case made resolution of issue raised by State Insurance Fund unnecessary).