[No. B006523. Second Dist., Div. Three. Apr. 23, 1986.]

GOLGOTAI ZURMATI, Plaintiff and Appellant, v.
LINDA S. McMAHON, as Director, etc., Defendant and Respondent.

**COUNSEL**

Daniel Marquez, Kathryn Grannis, Charles Wheeler and Mark Greenberg for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Pamela M. Nelson, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**DANIELSON, J.**—Petitioner, Golgotai Zurmati (petitioner), appeals from a judgment denying her petition for writ of mandate to command respondent Linda S. McMahon (respondent), as Director of the California Department of Social Services (the Department), to set aside her decision terminating petitioner's benefits under the aid to families with dependent children (AFDC) program, and for other relief. We affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Petitioner, an alien, is an Afghan national who came to the United States with her five minor children, also aliens, on a visitor's visa in February

1980. Petitioner's husband abandoned the family in May 1980. In June 1980, petitioner applied for, but has not yet received, political asylum, based upon the presence of Soviet troops in her country. Her visitor's visa expired in August 1980. She and her five children applied for and began receiving assistance from the Department under the AFDC program in August 1980.

On October 22, 1982, the Department issued a notice of action informing petitioner that she would no longer be eligible for AFDC benefits effective November 15, 1982 because none of the members of petitioner's family budget unit had the requisite status of an alien eligible for AFDC benefits.

Petitioner appealed and on May 5, 1983, an administrative hearing was held. Petitioner introduced into evidence a letter from the Immigration and Naturalization Service (INS), dated November 16, 1982, which read: "Your request for asylum in the United States has not been decided at this time. You will be scheduled for an interview in regards to your application at a later date. You are permitted to remain in the United States while your application is pending and until a final decision has been made. . . . [¶] Employment is authorized indefinitely." That letter was the only documentation from the INS or others, which petitioner produced.

On June 7, 1983, the hearing officer issued a proposed decision and order discontinuing petitioner's AFDC benefits on the ground that only citizens of the United States, and certain categories of aliens, are eligible for AFDC benefits, and that none of petitioner's family fall under any of the eligible classes of aliens, which are described in the Department's manual of policies and procedures (MPP). That decision and order was adopted by respondent on June 7, 1983. On August 12, 1983, petitioner received notice that her request for rehearing had been denied.

On December 22, 1983, petitioner filed a petition in the superior court for writ of mandate seeking judicial review of the final administrative decision and order of respondent. Petitioner alleged that respondent had committed a prejudicial abuse of discretion by misinterpreting and misapplying relevant federal and state laws and regulations governing the eligibility of aliens for benefits under the AFDC program, thereby denying such benefits to petitioner. Petitioner also alleged that the Department's regulations concerning the eligibility of aliens for AFDC benefits violate the supremacy clause of the United States Constitution because the Department's regulations requiring specific documentation as proof of eligible alien status for AFDC benefits are narrower and more restrictive than those of the underlying federal statute and regulations and are inconsistent with the relevant California statute, Welfare and Institutions Code section 11104. Petitioner

sought an order commanding the respondent to set aside the decision terminating petitioner's AFDC benefits and striking the Department's regulations governing the eligibility of aliens for AFDC benefits.

The petition was heard by the superior court on February 10, 1984, and, on March 21, 1984, that court entered its judgment denying the petition for writ of mandate, and awarding costs to respondent. Petitioner appealed.

### CONTENTIONS

Petitioner contends that the trial court erred:

1. By holding that petitioner is an alien who is not "permanently residing in the United States under color of law," within the meaning of 42 United States Code section 602(a)(33), and therefore is not eligible for benefits under the AFDC program; and

2. By not invalidating the Department's regulation prescribing the eligibility requirements for aliens seeking AFDC benefits because of being narrower than the federal requirements, thereby violating the supremacy clause of the U.S. Constitution.

Respondent controverts those contentions.

### DISCUSSION

*The Issue*

 The essential issue presented by this appeal is whether an alien who is in the United States illegally because of overstaying her visitor's visa, who has applied for but has not received political asylum, who has been notified by the INS that she is permitted to remain in the United States while her application is pending and until a final decision has been made, and is authorized to be employed, is an alien "permanently residing in the United States under color of law" within the meaning of 42 United States Code section 602(a)(33). We find to the contrary.

There are no reported decisions of the California courts on the issue presented though, as is pointed out below, a very similar case has been decided by the United States Court of Appeals for the Ninth Circuit, *Sudomir* v. *McMahon* (9th Cir. 1985) 767 F.2d 1456.

*The Nature of the AFDC Program*

The AFDC program is a cooperative federal-state program established by the Congress, as a part of the Social Security Act, to furnish financial as-

sistance to certain needy families with dependent children. (42 U.S.C. §§ 601-615.)[1]

The program was created by federal law, is governed fundamentally by federal laws and regulations, and is financed in large part by federal funds (42 U.S.C. § 603) paid to states which have submitted, and had approved by the Secretary of Health and Human Services (HHS), state plans for the AFDC program (42 U.S.C. § 601). The contents and eligibility requirements of the state plans for the AFDC program are mandatory, and are prescribed in great detail in the governing federal law and regulations. (42 U.S.C. § 602; 45 C.F.R. Part 233.) The AFDC program is administered by the states in accordance with their approved state plans and the relevant federal and state laws and regulations. The Department administers the program in California.

*Federal Laws and Regulations Are Supreme in AFDC Matters*

It is settled that federal laws and regulations, insofar as they are applicable, govern eligibility for and the payment of AFDC benefits. (U.S. Const., art. VI, cl. 2; *McCulloch* v. *Maryland* (1819) 17 U.S. (4 Wheat.) 316, 406 [4 L.Ed. 579].)

This supremacy is apparent in the provisions of the relevant federal laws. Title 42 United States Code section 601, provides that the federal funds made available under the AFDC program ". . . shall be used for making payments to States which have submitted, and had approved by the Secretary [of HHS], State plans for aid and services to needy families with children." And 42 United States Code section 602, begins with the mandate "A State plan for aid and services to needy families with children must . . . ," and then goes on for several printed pages specifying precisely the provisions which *must* be included in a state plan.

The primacy of the federal laws and regulations in AFDC matters had been confirmed by decisions of the Supreme Court of the United States (*Townsend* v. *Swank* (1971) 404 U.S. 282 [30 L.Ed.2d 448, 92 S.Ct. 502]; *King* v. *Smith* (1968) 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128], and by our own California courts. "[T]he [Social Security] Act (42 U.S.C.

---

[1]The eligibility of aliens for AFDC benefits involves the interplay of federal and state laws and regulations. Title 8 United States Code and title 8 Code of Federal Regulations (C.F.R.) are codifications of federal laws and regulations relating to Aliens and Nationality and are under the executive department jurisdiction of the Attorney General. Title 42 United States Code contains federal laws relating to the Public Health and Welfare and title 45 Code of Federal Regulations contains federal regulations relating to Public Welfare; both are under the jurisdiction of the Secretary of Health and Human Services.

§ 601) makes federal funds available to those states which have submitted and had approved by the Department of Health, Education and Welfare ("HEW") [now HHS] a plan for aid and services to needy families with children. Although the AFDC program is elective, once a state chooses to join, its plan must comply with the mandatory requirements established by the [Social Security] Act, as interpreted and implemented by regulations promulgated by HEW. [Citation.] California has elected to join the AFDC program, and under existing California law . . . [the] Director of the Department of Social Welfare, must establish regulations not in conflict with federal law (Welf. & Inst. Code, § 10604), and must administer the state program 'to secure full compliance with the applicable provisions of state and federal laws' (Welf. & Inst. Code, § 10600)." (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 738-739 [97 Cal.Rptr. 385, 488 P.2d 953].) "A state is not obligated to participate in an AFDC program, but if it does, it is required to conform to federal statutory and regulatory requirements." (*Bryant* v. *Swoap* (1975) 48 Cal.App.3d 431, 434 [121 Cal.Rptr. 867].)

The supremacy of federal law and regulations in AFDC has also been recognized by the California Legislature. Of particular relevance to the case at bench is a provision of Welfare and Institutions Code section 11104, which reads, in pertinent part, "Aliens shall be eligible for aid only to the extent permitted by federal law."

*Citizenship and Alienage Conditions of Eligibility for AFDC Benefits*

 In this appeal we must decide whether certain aliens now residing in California are eligible for AFDC benefits.

Among other requirements for AFDC eligibility, the basic federal statute (42 U.S.C. § 602(a)(33)) requires, as to citizenship and alienage, the State plans for AFDC *must* provide that any person whose needs are to be considered in determining AFDC eligibility ". . . must be either (A) a citizen, or (B) an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law (including any alien who is lawfully present in the United States as a result of the application of the provisions of section 1157(c) of title 8 (or of section 1153(a)(7) of title 8 prior to April 1, 1980), or as a result of the application of the provisions of section 1158 or 1182(d)(5) of title 8)."[2]

---

[2]Section 1157(c) of title 8 (Immigration and Nationality Act, § 207(c)) relates to aliens admitted by the Attorney General as refugees after March 31, 1980.

Section 1153(a)(7) of title 8 (Immigration and Nationality Act, § 203(a)(7)) related to aliens granted status as conditional entrant refugees prior to April 1, 1980.

Section 1158 of title 8 (Immigration and Nationality Act, § 208) relates to aliens granted political asylum by the Attorney General.

Section 1182(d)(5) of title 8 (Immigration and Nationality Act, § 212(d)(5)) relates to aliens granted temporary parole into the United States by the Attorney General.

The statutory requirements of 42 United States Code section 602(a)(33) have been implemented by a regulation (45 C.F.R. § 233.50) which, in substance, repeats the language of the statute, and clarifies the examples of the classes of aliens whom the statute includes in the description of those "permanently residing in the United States under color of law" as aliens lawfully present in the United States who are (1) aliens admitted (to the United States) as refugees after March 31, 1980, (2) individuals who were granted status as conditional entrant refugees before April 1, 1980, (3) aliens granted political asylum by the Attorney General, and (4) aliens granted temporary parole status by the Attorney General. The Secretary of HHS also views aliens granted indefinite stays of deportation (8 C.F.R. § 243.4) or extensions of voluntary departure (8 C.F.R. §§ 242.5(a)(2)–(3), 244.2) ". . . as eligible for AFDC benefits. Aliens in each class have been subject to an official review and are entitled to reside in the United States for an indefinite period." (*Sudomir* v. *McMahon, supra,* 767 F.2d 1456, 1460.)

California is a participant in the AFDC program and has adopted the federal standard of eligibility of aliens for aid, as set forth above, by the enactment of Welfare and Institutions Code section 11104, which provides: "Aliens shall be eligible for aid only to the extent permitted by federal law. [¶] An alien shall only be eligible for aid if the alien has been lawfully admitted for permanent residence, or is otherwise permanently residing in the United States under color of law. No aid shall be paid unless evidence as to eligible alien status is presented."

As was done by federal regulators to implement the federal statute (42 U.S.C. § 602(a)(33)), the Department implemented the California statute (Welf. & Inst. Code, § 11104) with MPP regulation No. 42-431.2 which is the effective equivalent of the federal regulation (45 C.F.R. § 233.50) and also includes the two categories specified in the *Sudomir* opinion, above, i.e., aliens granted indefinite stay of deportation and aliens granted indefinite voluntary departure.

The Department also requires (MPP reg. 42-430) that, as to proof of eligibility for AFDC benefits, "[c]itizens must prove their citizenship and aliens must prove their eligible alien status." The Department also requires (MPP reg. 42-433) that in order to prove eligible alien status for AFDC benefits an alien must present appropriate documentation of that status as described in MPP regulation 42-433.31.[3] That regulation lists various INS

---

[3] We note that the requirement that the alien must present appropriate documentation to prove eligible alien status is in accord with the legislative mandate that "No aid shall be paid unless evidence as to eligible alien status is presented." (Welf. & Inst. Code, § 11104, quoted above.)

forms reflecting that the alien has a described status, and also provides for acceptance by the Department of a court order or correspondence from the INS stating that the alien has been granted the status of indefinite voluntary departure or the status of indefinite stay of deportation. Thus it is clear that petitioner's argument, that the Department's regulations prescribing evidence of an alien's status violate the supremacy clause for being narrower and more restrictive than those of the underlying federal law and regulations, is without merit.

 As we noted above (p. 167), at the administrative hearing petitioner presented only one document in her effort to prove her eligible alien status.

*Petitioner's Claim of Eligibility for AFDC Benefits*

The federal regulation prescribing the citizenship and alienage conditions of eligibility for the AFDC program is 45 Code of Federal Regulations section 233.50, which provides:

"A State plan under . . . title IV-A (AFDC); . . . of the Social Security Act shall provide that an otherwise eligible individual, dependent child, or a caretaker relative or any other person whose needs are considered in determining the need of the child or relative claiming aid, must be either:

"(a) A citizen, or

"(b) *An alien* lawfully admitted for permanent residence or *otherwise permanently residing in the United States under color of law,* including certain aliens lawfully present in the United States as a result of the application of the following provisions of the Immigration and Nationality Act:

"(1) Section 207(c), in effect after March 31, 1980—Aliens Admitted as Refugees.

"(2) Section 203(a)(7), in effect prior to April 1, 1980—Individuals who were Granted Status as Conditional Entrant Refugees.

"(3) Section 208—Aliens Granted Political Asylum by the Attorney General.

"(4) Section 212(d)(5)—Aliens Granted Temporary Parole Status by the Attorney General." (Italics added.)

Petitioner's claim of eligible alien status depends upon an analysis of this regulation and whether the circumstances of her case meet its requirements.

Petitioner is not a citizen.

Petitioner does not base her claim for AFDC benefits on the ground that she is an ". . . alien lawfully admitted for permanent residence . . ." within the meaning of the regulation and of 42 United States Code section 602(a)(33). Permanent residence is a discrete status under the Immigration and Nationality Act. A person who has that status has been ". . . lawfully accorded the privilege of residing permanently in the United States as an immigrant . . . ." (8 U.S.C. § 1101(a)(20).) Such persons are given the familiar "green card" and are commonly known as "permanent residents." Petitioner concedes that she does not have that status.

Petitioner is not, and does not claim to be, an alien who has been granted a status described in subdivisions (b)(1)–(2) or (4) of the above regulation, nor does she claim to be an alien who has been granted an indefinite stay of deportation (8 C.F.R. § 243.4), nor that she has been granted indefinite voluntary departure (8 C.F.R. §§ 242.5(a)(2)–(3), 244.2).

Petitioner's claim to eligibility for AFDC benefits is based entirely upon her contention that because she has *applied* for political asylum, and is permitted to remain in the United States while her application is pending and until a final decision has been made, she is an alien "permanently residing in the United States under color of law" within the meaning of 42 United States Code section 602(a)(33). The regulation (subd. (b)(3)) recognizes the eligible status of "Aliens [who *have been*] *Granted* Political Asylum by the Attorney General . . . ." (italics added), but it does not contain a subsection which includes someone like petitioner, who has applied for, but has not yet been granted, political asylum.

Thus the answer to the essential issue presented by this appeal depends on whether an alien who has applied for, but has not been granted, political asylum, has a status as to permanent residency which is the equivalent of that of an alien who has been granted political asylum by the Attorney General.

*An Applicant for Political Asylum Is Not Permanently Residing in the United States Under Color of Law*

A factual situation similar to that at bench was presented in *Sudomir* v. *McMahon, supra,* 767 F.2d 1456. In *Sudomir* three aliens who had applied for, but had not been granted, political asylum, sought declaratory relief and an injunction to prevent the Department from denying their eligibility for AFDC benefits. The Secretary of HHS was brought into the action as a

party defendant in order to bind the Secretary to any judgment which might be entered against the State of California.

One of the three aliens had entered the United States illegally; the other two had entered legally but had overstayed the terms of their nonimmigrant visas. All three had applied for, but had not been granted, political asylum and the INS had stayed the institution of deportation proceedings pending the outcome of the asylum application process. Each of them applied for AFDC benefits and their applications were denied because of their status as asylum applicants.

They appealed from the denial of their motion for a preliminary injunction by the United States District Court.

■ On appeal, the U.S. Court of Appeals for the Ninth Circuit noted that, in the federal courts, "[a]n agency's interpretation of a statute it administers is entitled to considerable deference. [Citations.] 'Properly accorded, such deference entails affirmance of any interpretation "within the range of reasonable meanings the words permit," comporting with the statute's clear purpose.' [Citation.]" (*Id.*, at p. 1459.)

■ The court stated that the Secretary's interpretation of 42 United States Code section 602(a)(33) was that asylum applicants were not eligible for AFDC benefits (*id.*, at pp. 1458-1459), and that the Secretary contended ". . . that 'permanently residing . . . under color of law' rests on two factors: first, an official determination by the INS that an alien is legitimately present in the country and, second, a determination that the alien is legitimately present for an indefinite period of time. These factors, the Secretary maintains, are the common threads running through the categories of aliens enumerated in [Title 42 United States Code] section 602(a)(33). [Fn. omitted.]" (*Id.*, at p. 1459-1460.)

The Ninth Circuit pointed out that asylum applicants have received no official sanctioning of their presence in the United States and no official determination that they remain indefinitely. "Their status and its duration are inchoate. An application triggers an administrative process that culminates either in the award of political asylum or in the institution of deportation or voluntary departure proceedings. It does not . . . confer any status or right to reside in the United States permanently [fn. omitted]." (*Id.*, at p. 1460.)

The court also pointed out that the asylum applicants in that case had ". . . either entered or remained in the United States illegally and then applied for asylum. Their presence is tolerated during the period necessary

to process their applications; it has not been legitimated by any affirmative act." (*Id.*, at p. 1462.)

The Ninth Circuit concluded that the Secretary's assertion that the Congress never intended to extend AFDC benefits to aliens whose sole claim to entitlement rests on their filing applications for asylum with the INS was reasonable and permissible (*id.*, at p. 1464) and affirmed the District Court's denial of appellants' motion for a preliminary injunction. (*Id.*, at p. 1467.)

We also note a fundamental factual difference between the status of petitioner as an asylum applicant, in the case at bench, and the six categories of aliens deemed to be permanently residing in the United States under color of law as listed in 42 United States Code section 602(a)(33), 45 Code of Federal Regulations section 233.50 and the Department's MPP regulation 42-431.2.

In each and all of those six categories the presence of the alien in the United States is the result of an affirmative "admission" or "grant," by a competent official authority, of a specific status, which carries with it the right of the alien to reside in the United States for an indefinite period of time, so long as that status exists. For each such category, some official administrative process has been commenced and carried out, and the applicant alien has been subject to some official scrutiny, *before* being accorded the privilege of residing in the United States for an indefinite period of time.

The circumstances of petitioner's residence in the United States are in stark contrast, and do not satisfy this fundamental and essential requirement. Petitioner is not residing in the United States as the result of any affirmative admission or grant of status by a competent official authority. No official administrative process was ever commenced and carried out, petitioner was not subject to any official scrutiny, and petitioner was never accorded the privilege of permanently residing in the United States. Petitioner's residence here is not a privilege granted to her, it is the result of her own action, she has taken it unto herself, pro se.

An applicant for political asylum is one who seeks that status, but does not have it.

We find that the status of an applicant for political asylum is not the same as that of an alien who has been granted political asylum. To hold otherwise would be to render meaningless the provisions of 42 United States Code section 602(a)(33) and 45 Code of Federal Regulations section 233.50(b)(3) which provide that aliens lawfully present in the United States, *who have*

*been granted* political asylum by the Attorney General, are "permanently residing in the United States under color of law." Such a holding would make it possible for every alien who is present illegally in the United States to change his own status by the simple act of making an application for political asylum and thereby to clothe himself with all of the benefits and privileges of an alien who has been lawfully admitted under the applicable laws and regulations. ■ Such a result would be an absurdity and it is the duty of courts to construe statutes so as to avoid absurd results. (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 9 [177 Cal.Rptr. 325, 634 P.2d 352].)

■ Petitioner places great reliance on *Holley* v. *Lavine* (2d Cir. 1977) 553 F.2d 845, certiorari denied 435 U.S. 947 [55 L.Ed.2d 545, 98 S.Ct. 1532], to support her contentions; that reliance is misplaced. *Holley* is factually different. The petitioner in *Holley* was a Canadian citizen who entered the United States on a student visa, overstayed her visa, married, and had six children who were born in the United States and American citizens and all were minors living with and dependent on the petitioner, their mother, at the time of the litigation. (*Id.,* at p. 849.)

The New York State authorities were paying AFDC benefits to the mother for her six children but had ceased to pay any such benefits to the mother on her own account as parent. (*Id.,* at p. 848.) The INS had given the New York State Department of Social Services a formal letter stating that as to the mother/petitioner, "'deportation proceedings have not been instituted . . . for humanitarian reasons' and the 'Service does not contemplate enforcing her departure from the United States at this time.' [¶] . . . Should the dependency of the children change, her case would be reviewed . . . ." (*Id.,* at pp. 849-850.) The *Holley* court ruled that inasmuch as petitioner's residence in the United States was assured at least until all her children had grown to full age, a period of several years, the phrase "'permanently residing in the United States'" included such a person as the petitioner. (*Id.,* at p. 851.)

The Court of Appeals for the Ninth Circuit noted *Holley* in its opinion in *Sudomir* (767 F.2d 1460-1461), without comment, and did not follow it as precedent. We also note that the concerned agency of the United States government, the Department of Health, Education and Welfare [now HHS] did not take part in the litigation in *Holley,* either as a party or as amicus curiae, in the district court or the court of appeals (*Holley, supra,* 553 F.2d at p. 849), and thus its views were not heard or considered in that case. Fair minds could conclude that the decision in *Holley* was affected by the same "humanitarian reasons" that were mentioned in the letter from the INS which figured in that case. (*Holley, supra,* 553 F.2d at p. 849.)

Petitioner also argues that her status is enhanced because, in its letter to her, the INS stated "Employment is authorized indefinitely." That argument is without merit. The INS may, in its discretion, grant a request for employment authorization upon the filing of an application for political asylum. (8 C.F.R. § 208.4.) The grant of such authorization confers no other status.

## CONCLUSION

We find that petitioner, an applicant for political asylum, is not "an alien . . . permanently residing in the United States under color of law" and therefore not an alien eligible for AFDC benefits under the governing laws and regulations. In view of our finding we do not reach petitioner's other contention.

## DECISION

The judgment appealed from is affirmed.

Klein, P. J., concurred.

**LUI, J.**—I concur in the result reached by the majority because of my conclusion that the question presented in this appeal is a matter which is governed by federal and not California law. The conclusion reached in *Sudomir* v. *McMahon* (9th Cir. 1985) 767 F.2d 1456, 1464, is precisely on point with the essential issue presented in this appeal and should be applied by us in reaching our disposition.

Nevertheless, I find the reasoning of Circuit Judge Canby's dissent in *Sudomir* to be extremely persuasive and more closely associated with the views to which I subscribe. I do join, however, in the majority's result since the supremacy clause dictates that federal law should apply in this instance.

A petition for a rehearing was denied May 16, 1986, and appellant's petition for review by the Supreme Court was denied July 9, 1986.