Gayle McQuoid HOLLEY, Individually
and on behalf of James McQuoid, et
al., Plaintiffs-Appellants,

v.

Abe LAVINE, as Commissioner of the New
York State Department of Social Services, and James Reed, as Commissioner
of the Monroe County Department of
Social Services, Defendants-Appellees.

No. 731, Docket 76–7588.

United States Court of Appeals,
Second Circuit.

Argued April 6, 1977.

Decided April 27, 1977.

---

K. Wade Eaton, Rochester, N. Y. Greater Up-State Law Project, for appellants.

Louis J. Lefkowitz, Atty. Gen. of the State of N. Y., Albany, N. Y., for appellee State Commissioner of Social Services, Albany, New York.

Jean M. Coon, Asst. Sol. Gen., Alan W. Rubenstein, Principal Atty., Albany, N. Y., for Lavine.

Charles G. Finch, Chief Counsel, Charles G. Porreca, of counsel, Monroe County Department of Social Services, Rochester, N. Y., for Reed.

Before OAKES, Circuit Judge, HOLDEN, District Judge,* and WYZANSKI, Senior District Judge.**

WYZANSKI, Senior District Judge:

This is an appeal from a judgment entered by Judge Harold P. Burke in the United States District Court for the Western District of New York. Plaintiff is an alien unlawfully residing in the United States but covered by an official communication from the Immigration and Naturalization Service stating that it "does not con-

template enforcing her departure from the United States at this time." Defendants administer New York Social Services Law § 131–k–1 and New York State Department of Social Services regulation 18 N.Y.C.R.R. § 349.3(a), both of which provide that "an alien who is *unlawfully residing* in the United States" shall not be "eligible for aid to dependent children".

Pursuant to those New York state regulations defendants cut off payments of Aid for Dependent Children (AFDC) benefits to plaintiff.

The question presented is whether such application of New York state law is repugnant to provisions of the national Social Security Act incorporated in 42 U.S.C. §§ 601, 602(a)(10), and 606(b)(1) and to the implementing regulation set forth in 45 C.F.R. § 233.50. The relevant part of the Social Security Act, 42 U.S.C. § 601 authorizes "payments to States which have submitted, and had approved by the Secretary [of H.E.W.], State plans for aid and services to needy families with children." The Secretary, by 45 C.F.R. § 233.50, has stipulated that the "State plan . . . shall include an otherwise eligible individual who is a resident of the United States but only if he is either (a) a citizen or (b) an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law (including any alien who is lawfully present in the United States as a result of the application of the provision of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act)."

The basic facts in this case were found by the New York authorities and are undisputed.

Plaintiff, then called Diane Gayle Rivers, was born in Smith Falls, Ontario, Canada on August 22, 1942. At birth she was, and ever since she has been, a citizen of Canada. As a single girl aged twelve she entered the United States lawfully in 1954 as a temporary non-immigrant student, pursuant to an

* Chief Judge for the District of Vermont, sitting by designation.

** Senior District Judge for the District of Massachusetts, sitting by designation.

earlier version of 8 U.S.C. § 1101(a)(15)(F). Since 1954, except for three months in 1958, she has continuously resided in the United States. On September 6, 1959 in the United States she married Norman Stanley McQuoid. She then took the name of Gayle McQuoid. Five children, who are still minors, were born in the United States of that marriage. By virtue of the Fourteenth Amendment to the United States Constitution, they are American citizens. In August 1966 she and Stanley McQuoid separated. Later she had a sixth child born in the United States, and hence an American citizen.

Initially, the New York State Department of Social Services through the Monroe County Department of Social Services paid to plaintiff on account of herself and each of her six children a separately calculated sum on account of the Aid to Families with Dependent Children (AFDC) program cooperatively operated by the State of New York and the federal Department of H.E.W. After the State of New York in 1974 enacted § 131–k–1 of its Social Services Law, which provided that every alien "unlawfully residing in the United States . . . is not eligible for aid to dependent children", the Commissioner of the State Department for Social Services and the Commissioner of the Monroe County Department for Social Services, on behalf of the State of New York, ceased to pay to the plaintiff anything on her own account as parent, but did continue to pay to the plaintiff AFDC benefits for her six children.

Following appropriate application to the New York state authorities which was unsuccessful, plaintiff, on her own behalf and on behalf of her six children, filed a complaint in the District Court against the defendants, who are respectively the Commissioner of the New York State Department of Social Services and the Commissioner of the Monroe County Department of Social Services, seeking equitable and monetary relief on account of the non-payment to her as a parent of any AFDC benefit. Judge Burke dismissed the complaint for lack of jurisdiction and failure to state a claim on which relief could be granted. This court reversed in a short per curiam opinion, *Holley v. Lavine,* 529 F.2d 1294 (2nd Cir.), *cert. denied,* 426 U.S. 954, 96 S.Ct. 3181, 49 L.Ed.2d 1193 (1976), in which the District Court on remand was directed to convene a three-judge court to consider appellant's constitutional claims unless it found her statutory claims to be meritorious, *id.* at 1296. On remand both plaintiff and defendants ultimately moved for summary judgment. The District Court entered judgment for defendants. In the District Court Judge's opinion the state statute, § 131–k–1 of the New York Social Services Law, as applied to cut off the plaintiff's individual AFDC benefits as parent, was not repugnant to the national Social Security Act. The District Judge denied the motion to convene a three-judge court. Plaintiff appealed to this court.

We start with the obvious point that the elimination of payments to plaintiff for herself was plainly authorized by the text of the state law. But the first question for us is whether that law is in conflict with the plan approved by the Secretary of H.E.W. pursuant to 45 C.F.R. § 233.50, implementing 42 U.S.C. § 601.

■ It is not contested that the federal law, so far as it is applicable, governs the payment of AFDC benefits, as a consequence of the Supremacy Clause, Article VI of the United States Constitution. *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

What are contested are the conditions upon which the Secretary of H.E.W. gave his approval to the New York State plan. More specifically the question relates to the meaning of "permanently residing in the United States under color of law", a phrase appearing in 45 C.F.R. § 233.50, which provides that:

". . . A state plan . . . shall include an otherwise eligible individual who is a resident of the United States but only if he is either (a) a citizen or (b) an alien lawfully admitted for permanent residence or otherwise permanently resid-

ing in the United States under color of law (including any alien who is lawfully present in the United States as a result of the application of the provisions of Section 203(a)(7) or Section 212(d)(5) of the Immigration and Nationality Act.)"

We are not supplied with the administrative or legislative background, if any existed, of the quoted regulation. Nor, despite our proposal, has the Department of H.E.W. chosen to help us. Pursuant to this Court's suggestion when this case was here before, *Holley v. Lavine, supra,* plaintiff's counsel requested the views of the Department of H.E.W. The Department replied that it would require a request from the District Court for the Department's appearance as an *amicus curiae.* April 7, 1976 plaintiff asked the District Court to invite H.E.W. to appear. But the District Judge did not respond.

In the absence of other background material, defendants, speaking for their State government, argued that the New York statute and the federal regulation reflect a problem of horrendous proportions. We are asked to take judicial notice that millions of persons are unlawfully in the United States. Their presence is said to be the cause of major financial burdens to the states and the nation because these illegal aliens claim unearned benefits from welfare systems. It is argued that the states to protect their solvency have the right to drop from the welfare rolls those who, because their residence is in violation of law, are subject to deportation.

The picture presented in such vivid colors hardly represents this particular case.

We are *not* dealing with a person who is residing in the United States without the knowledge or permission of the Immigration and Naturalization Service. She fully disclosed her situation to the Department of Justice which found that plaintiff, having been admitted lawfully as a student, married in this country a husband; they had five children born here as American citizens; plaintiff then separated from her husband, and later had a sixth child who is also an American citizen by birth; all six

children are minors living with their mother; and all six are now entitled to receive and are receiving AFDC payments.

Having this information, a responsible official of the Immigration and Naturalization Service—the officer authorized by the Department of Justice to initiate in the District of Buffalo, where plaintiff is living, any appropriate deportation proceeding—by formal letter, mentioned earlier in this opinion, notified a responsible official of the New York State Department of Social Services that "deportation proceedings have not been instituted . . . for humanitarian reasons" and the "Service does not contemplate enforcing her departure from the United States at this time."

Far from being in a class with millions of aliens unlawfully residing in the United States, plaintiff is in what is almost certainly a minuscule sub-class of aliens who, although unlawfully residing in the United States, are each individually covered by a letter from the Department of Justice stating that the Immigration and Naturalization Service "does not contemplate enforcing . . . [the alien's] . . . departure from the United States at this time."

This case is thus narrowed to the precise question whether, in the unusual situation where an alien parent has an official assurance that the parent will not be deported at least until the children are no longer dependent on that parent, such parent is "permanently residing in the United States under color of law."

▮ We first answer so much of the question as calls for a construction of the phrase "under color of law" as used in this regulation. The phrase obviously includes actions not covered by specific authorizations of law. It embraces not only situations within the body of the law, but also others enfolded by a colorable imitation. "Under color of law" means that which an official does by virtue of power, as well as what he does by virtue of right. The phrase encircles the law, its shadows, and its penumbra. When an administrative

agency or a legislative body uses the phrase "under color of law" it deliberately sanctions the inclusion of cases that are, in strict terms, outside the law but are near the border.

There is no more common instance of action "under color of law" than the determination of an official charged with enforcement of the law that he, as a matter of public policy, will exercise his discretion not to enforce the letter of a statute or regulation because such enforcement would involve consequences, or inflict suffering, beyond what the authors of the law contemplated. The discretionary refusal of a prosecutor or like administrator of the law to use his enforcement powers is often not supported by specific language in a statute or other charter of authority. Yet there is a legion of adjudicated cases which recognize that the prosecutor or like enforcing official may exercise a discretionary power, virtually unreviewable by a court, *not* to enforce a statutory command, and *not* to seek the imposition of penalties or other sanctions upon a known violator. *Peek v. Mitchell,* 419 F.2d 575 (6th Cir. 1970); *Newman v. United States,* 127 U.S.App.D.C. 263, 382 F.2d 479 (1967); *Nader v. Kleindienst,* 375 F.Supp. 1138 (D.C.D.C.1973).

■■■ The case at bar is an obvious instance of an executive department, here INS, determining not to enforce one set of laws because to do so would defeat another avowed Congressional object, here that involved in enacting 42 U.S.C. § 606(b)(1). According to House Report No. 1300, cited in *Shirley v. Lavine,* 365 F.Supp. 818, 822 (N.D.N.Y., 1973), *aff'd,* 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975), the statute provides AFDC payments to the parent or other adult with whom a dependent child lives, on the ground that "in families with small children, it is necessary for the mother or the adult to be in the home full time to provide proper care and supervision". Congress sought to avoid suffering by innocent American minor children, and perhaps sought to prevent the public treasury from incurring greater expense for foster care than it now incurs for parental care. In

short, "under color of law", those charged with the power to deport have allowed plaintiff, as a parent of American citizens, to remain a resident.

But it is argued that the parent is not "permanently residing" in the United States, inasmuch as the parent's status is dependent upon a letter which explicitly states that "the Service does not contemplate enforcing her departure from the United States *at this time.* Should the dependency of the children change, her case would be reviewed for possible action consistent with circumstances then existing". (Emphasis added.)

In construing H.E.W. Regulation 45 C.F.R. § 233.50, we are mindful that the regulation is expressed in words of art carefully chosen. The regulation makes a distinction based on whether "an otherwise eligible individual . . . is . . . an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law (including any alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act)".

In matters arising under, or cognate to, the Immigration and Nationality Act the phrase "permanently residing in the United States under color of law" may properly be construed with an eye to 8 U.S.C. § 1101(a)(31) which provides that in the immigration law "The term 'permanent' means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law". The statutory definition of the adjective "permanent" aids in the interpretation of the adverb "permanently".

Far more significant as aids to interpretation of 45 C.F.R. § 233.50 are the very parts of the Immigration and Nationality Act which the regulation itself gives as illustrative, that is the provisions of section

203(a)(7) [8 U.S.C. § 1153(a)(7)] and section 212(d)(5) [8 U.S.C. § 1182(d)(5)] of the Immigration and Nationality Act. Section 203(a)(7) permits a refugee to have only conditional entry pursuant to regulations of the Attorney General and section 212(d)(5) permits the Attorney General in his discretion to parole into the United States temporarily an otherwise inadmissible alien.

Those sections are themselves instances where the alien is permitted to stay in the United States not necessarily forever, but only so long as he is in a particular condition. Those statutory references furnish a suitable occasion to invoke the maxim *noscitur a sociis.* Such invocation is congenial to the general attitude displayed in the Social Security Act—for in 42 U.S.C. § 1301(b)—which admittedly governs interpretation only of the statute itself and not of regulations thereunder—Congress provided that the word "includes" "shall not be deemed to exclude other things otherwise within the meaning of the term defined". This is a legislative caution to lean more on the *"ejusdem generis"* than on the *"inclusio unius, exclusio alterius"* canon of construction.

We, therefore, reach the conclusion that as the Secretary of H.E.W. used the phrase "permanently residing in the United States" in 45 C.F.R. § 223.50, the Secretary included such a person as plaintiff whose residence in this country was assured at least until all her children had grown to full age, and might be extended thereafter indefinitely dependent upon conditions then existing. We also note that extension is highly probable because this alien's ties are so close to six American citizens that no executive department is likely to require her to return to a land she left when she was a beginning student and before she was educated and married in the United States.

Our conclusion moots the issue as to whether § 131–k–1 of the New York Social Services Law, if applied to preclude the payment of AFDC benefits to an alien not permanently residing lawfully in the United States, would violate the Fourteenth Amendment to the United States Constitution. Hence there is no need to convoke a three judge District Court to consider the matter.

There remains to be considered by the District Court the appropriate form of injunction as well as issues of damages, [cf. *Edelman v. Jordan,* 415 U.S. 651, 667, n. 12, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)] and attorney's fees both in the District Court and in this Court. [See Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94–559, 90 Stat. 2641; *Torres v. Sachs,* 538 F.2d 10 (2nd Cir., 1976).]

Since it appears the original judge might have difficulty in putting aside previously expressed views, and reassignment is advisable to avoid the appearance of prejudgment, the case will be remanded to the District Court for reassignment in keeping with the principles stated in *United States v. Robin,* 553 F.2d 8, 10 (2nd Cir., March 30, 1977).

Reversed and remanded for the issuance of an appropriate injunction, and for consideration of issues of damages and attorney's fees both in the District Court and in this Court.