**Helga LAPRE**

**v.**

**DEPARTMENT OF EMPLOYMENT SECURITY, Board of Review.**

**83–624–Appeal.**

Supreme Court of Rhode Island.
July 22, 1986.

Henrietta Zalkind, Providence, for petitioner.

Valentino D. Lombardi, Legal Counsel, DES, William G. Brody, Powers & McAndrew, Providence, for respondent.

## OPINION

KELLEHER, Justice.

This is an unemployment-compensation-benefits dispute that comes to us by way of statutory petition for certiorari issued pursuant to the pertinent provisions of the Administrative Procedures Act. The petitioner, Helga Lapre, claims that a District Court judge erred in affirming the denial by the Department of Employment Security's Board of Review of her claim for compensation benefits. Hereafter we shall refer to the petitioner as "Lapre" and to the board of review as "the board."

The pertinent facts in this controversy are undisputed. In mid-December 1957 Lapre, then a citizen of Germany, married an American citizen. Seven months later she came to the United States and was granted admittance as a "lawful permanent resident." While a resident of the United States, she gave birth to two sons. In 1975 Lapre returned to Germany with one of her sons and remained there until late May 1980, when she returned to the United States. Upon arrival, she was allowed to enter the country, having been given "deferred inspection" status by the Immigration and Naturalization Service (INS).

On December 23, 1980, Lapre met with officials of INS to ascertain her immigration status. On this occasion she was informed that because of her extended stay in Germany, she had, in the eyes of INS, abandoned her lawful-permanent-resident status. However, she was told by INS personnel what steps she could take to regain that status. Eight months later, in August 1981, she filed a petition for adjustment of status. A petition on her behalf had also been filed by the son who had remained in the United States. Lapre's petition was granted on October 26, 1981, and four days later she was laid off from work.

The record indicates that Lapre had been employed as a stonesetter in Pawtucket with Imperial Pearl Company for seven months prior to the October 30 layoff. Relying on the record, the referee concluded that Lapre had not been lawfully admitted as a permanent resident until late October 1981 and that she could not receive benefits on the basis of her unauthorized earnings. The board summarily affirmed the action of the referee, and Lapre met a similar fate in the District Court.

The decisive issue in this controversy is whether Lapre, who was residing within the United States with the full acquiescence of INS while awaiting a return to her status as a legal permanent resident, was "permanently residing in the United States under color of law at the time such services were performed." 26 U.S.C.A. § 3304(a)(14)(A) (West 1979).

The relevant statute in this case is G.L. 1956 (1979 Reenactment) § 28–44–67(a), which is substantially similar to the federal legislation and was adopted by the General Assembly as a guarantee of continuing federal approval of this state's unemployment-compensation law. In its relevant portion, § 28–44–67(a) states that benefits shall not be paid for services performed by an alien unless the alien has been "lawfully admitted for permanent residence or otherwise is permanently residing in the United States under color of law."

The United States Supreme Court has yet to interpret the phrase "permanently

residing in the United States under color of law." However, several federal and state courts have done so. In *Holley v. Lavine,* 553 F.2d 845 (2d Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978), the plaintiff was an alien unlawfully residing in the United States but the recipient of an official communication from INS stating that it "does not contemplate enforcing [her] departure from the United States at this time." The court noted,

> "There is no more common instance of action 'under color of law' than the determination of an official charged with enforcement of the law that he, as a matter of public policy, will exercise his discretion not to enforce the letter of a statute or regulation because such enforcement would involve consequences, or inflict suffering, beyond what the authors of the law contemplated." 553 F.2d at 850.

The court also commented that

> "[t]he discretionary refusal of a prosecutor or like administrator of the law to use his enforcement powers is often not supported by specific language in a statute or other charter of authority. Yet there is a legion of adjudicated cases which recognize that the prosecutor or like enforcing official may exercise a discretionary power, virtually unreviewable by a court, *not* to enforce a statutory command, and *not* to seek the imposition of penalties or other sanctions upon a known violator." *Id.*

The *Holley* rationale has been embraced and endorsed repeatedly by other jurisdictions when confronted with similar issues regarding the eligibility of aliens for various state social-welfare benefits. *See Esparza v. Valdez,* 612 F.Supp. 241 (D.C. Colo.1985); *Division of Employment and Training v. Industrial Commission,* 705 P.2d 1022 (Colo.Ct.App.1985); *Cruz v. Commissioner of Public Welfare,* 395 Mass. 107, 478 N.E.2d 1262 (1985); *St. Francis Hospital v. D'Elia,* 71 A.D.2d 110, 422 N.Y.S.2d 104 (1979), *aff'd,* 53 N.Y.2d 825, 422 N.E.2d 830, 440 N.Y.S.2d 185 (1981); *Rubio v. Employment Division,* 66 Or.App. 525, 674 P.2d 1201 (1984); *Antil-*

*lon v. Department of Employment Security,* 688 P.2d 455 (Utah 1984).

The board attempts factually to distinguish *Holley* and *Rubio* from the present controversy. In *Holley* the court noted that the alien was covered by a letter from the Department of Justice stating that INS was not contemplating enforcing the alien's departure at that particular time. In *Rubio* an illegal alien married to a United States citizen was granted three months to depart voluntarily from the country. The grant of voluntary departure was renewed until the plaintiff received his permanent-resident status.

However, more recent holdings have applied the reasoning in *Holley* in instances in which INS had not taken active steps to relinquish its right to deport the alien. In *Antillon,* 688 P.2d at 458, the court stated that the status of "permanently residing under color of law" was established in a situation in which INS knew that the plaintiff was residing in the United States and took no action to deport him or act on his application for immigrant status. Similar sentiments also appear in *Arteaga v. Industrial Commission,* 703 P.2d 654 (Colo. Ct.App.1985).

Thus, it can be seen from *Holley* and those cases that follow it that INS has broad discretion in deportation cases and that exercise of that discretion can take many forms, including a formal letter that INS has no plans to deport a particular alien or instances in which the agency simply does nothing. Not only does the case law of other jurisdictions support the *Holley* rationale, but INS operating instructions specifically provide that when a petitioner is prima facie entitled to adjustment of legal status, as Lapre was, no deportation proceedings should be initiated. INS Operating Instructions, § 242.2a(25), § 245.1a.

We are of the opinion that as of December 23, 1980, INS had acceded to Lapre's permanent residence in the United States under color of law when it told her that her permanent-resident status had expired but at the same time took pains to instruct her

how to regain that status. Consequently, during the time Lapre was employed in the Pawtucket shop, INS was aware of her permanent residence and indeed acquiesced in her continued residence, for it took no steps to deport her. In fact, it aided her efforts to remain in this country.

Parenthetically, we would note that the trial justice's affirmance of the denial of benefits is understandable because it appears from the record that the holding in *Holley* was never raised at the administrative level.[1]

Lapre's petition for certiorari is granted, the judgment appealed from is quashed, and the case is remanded to the District Court with direction to remand it to the Department of Employment Security for a determination of the compensation benefits due the petitioner.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.

---

1. In a supplemental brief filed on Lapre's behalf, two decisions are attached, one from the board of review and one by a referee, in which immigrants similar to Lapre were awarded benefits because of the under-color-of-law proviso. One award appears to be in July of 1983, and the other bears the date of January 14, 1986.