241 N.J. Super. 216 (1990)
574 A.2d 992
CAROLINA BRAMBILA AND MARIO BRAMBILA, CLAIMANTS-APPELLANTS,
v.
BOARD OF REVIEW, NEW JERSEY DEPARTMENT OF LABOR AND INDUSTRY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 23, 1990.
Decided May 8, 1990.
*217 Before Judges LONG, GRUCCIO and LANDAU.
Keith G. Talbot, Senior Attorney, argued the cause for appellants (Camden Regional Legal Services, Inc., Farmworker Division, attorneys; Keith G. Talbot, on the brief).
Lewis A. Scheindlin, Deputy Attorney General argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Mary C. Jacobson, Deputy Attorney General, of counsel; Lewis A. Scheindlin on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Carolina Brambila and Mario Brambila (claimants) appeal from a final decision of the Board of Review, State of New Jersey Department of Labor (Board) which denied their claims for unemployment benefits. In so ruling, the Board reversed the Appeal Tribunal which had overruled an initial determination of claim invalidity by the local unemployment office deputy. The initial determination was made by checking a box opposite the following explanation: "Wages earned by an individual not authorized to work by the Immigration and Naturalization Service may not be used to establish a valid claim for benefits."
*218 Carolina Brambila entered the United States illegally in 1973. She performed agricultural work on a sporadic basis from May 1, 1985 through late 1987. On November 29, 1987 she filed a claim for unemployment benefits. She filed an application for temporary resident status as a Special Agricultural Worker (SAW) with the Immigration and Naturalization Service (INS) on January 26, 1988 and received an employment authorization card on January 29, 1988.
Mario Brambila, a relative of Carolina's,[1] entered the United States in June 1985 as an illegal alien. He performed sporadic agricultural work from June 1985 through late 1987. Mario filed an application with the INS for SAW status and received his employment authorization card on October 23, 1987. He filed a claim on January 3, 1988 seeking unemployment benefits.
The Board denied claimants' applications for unemployment benefits based upon interpretation of federal and state statutes and case law. The applicable New Jersey statute, N.J.S.A. 43:21-4(i)(1), reads as follows:
Benefits shall not be paid on the basis of services performed by an alien unless such alien is an individual who was lawfully admitted for permanent residence at the time the services were performed and was lawfully present for the purpose of performing the services or otherwise was permanently residing in the United States under color of law at the time the services were performed (including an alien who is lawfully present in the United States as a result of the application of the provision of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act); provided that any modifications of the provisions of section 3304(a)(14) of the federal Unemployment Tax Act, as provided by Public Law 94-566, which specify other conditions or other effective dates than stated herein for the denial of benefits based on services performed by aliens and which modifications are required to be implemented under State law as a condition for full tax credit against the tax imposed by the federal Unemployment Tax Act, shall be deemed applicable under the provisions of this section. (Footnotes omitted).
As noted by the Board under this statute, "the eligibility of an alien to receive benefits is directly dependent upon whether the *219 alien is entitled to benefits under the Federal Unemployment Tax Act (FUTA)."
For a state to receive federal tax credits and grants, the state's unemployment benefit program must comply with standards set forth in FUTA. Ibarra v. Texas Employment Comm'n, 823 F.2d 873, 874 (5th Cir.1987). As explained in Ibarra:
Unemployed workers receive compensation through a cooperative federal-state scheme. Wimberly v. Labor & Indus. Relations Comm'n, 479 U.S. 511, 107 S.Ct. 821, 824, 93 L.Ed.2d 909 (1987). The Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301-3311, does not mandate state participation; rather, by providing federal grants and tax credits FUTA creates incentives for states to adopt employment security programs that comply with minimum federal standards. New Hampshire Dep't of Employment Sec. v. Marshall, 616 F.2d 240, 241 (1st Cir.), cert. denied, 449 U.S. 806, 101 S.Ct. 53, 66 L.Ed.2d 10 (1980). Through its tax the scheme derives funds used principally to defray administrative expenses. Through its incentives, the scheme makes it advantageous for states to impose taxes which create funds for compensation payments to employees.
Id. The Board placed great significance on the perceived legislative intent to be consistent with FUTA. (Citing N.J.S.A. 43:21-4(i)(1)).
Claimants argued that they were "permanently residing in the United States under color of law" (PRUCOL) at the time they performed agricultural work, under federal and state statutory interpretation. The Board found that "the fact that an alien claimant has filed an application for work authorization or some other immigrant status does not" confer PRUCOL status. As noted in Esparza v. Valdez, 612 F. Supp. 241, 244 (D.Col. 1985), aff'd, 862 F.2d 788 (10th Cir.1988), cert. den., ___ U.S. ___, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989), such an interpretation would:
[S]eriously erode the government's ability to deal with the problem of illegal aliens. It would permit any alien, without regard to the legality of his entry, to obtain a job, make his presence known to the INS by the filing of some application, and, in the absence of deportation, claim that his residence was "under color of law." Congress has not indicated an intention to place such persons into the unemployment compensation benefits program.
*220 Claimants contend that as a result of the Immigration Reform and Control Act (IRCA), enacted November 6, 1986, they should be considered PRUCOL from the date of its enactment. IRCA, codified at 8 U.S.C.A. § 1160, contains provisions for special agricultural workers (SAWs), defined as aliens who have resided in the United States and performed seasonal agricultural services in the United States for at least 90 "man-days" in the 12-month period between May 1, 1985 and May 1, 1986. 8 U.S.C.A. § 1160(a)(1)(B). This category of individuals, which includes claimants, could apply for adjustment of their status from that of illegal alien to that of alien lawfully admitted for temporary residence. 8 U.S.C.A. § 1160(a)(1). This application had to be submitted between June 1, 1987 and November 30, 1988. 8 U.S.C.A. § 1160(a)(1)(A). There is, however, a distinction between approval of an application for temporary residence and employment authorization. Claimants received the latter authorization.
The Board determined that claimants had not been granted temporary resident status at the time of the hearing. The Board specifically noted that "the retroactive use of an alien's wages to November 6, 1986 is permitted only if the alien is granted lawful temporary resident status." (emphasis original). In reaching this conclusion, the Board placed reliance upon United States Department of Labor Unemployment Insurance Program Letter No. 12-87, September 28, 1988, which so directed.
In denying the benefits the Board concluded:
[A] special agricultural worker is eligible for benefits only if granted lawful temporary resident status.... As of the date of the Board hearing, the claimant[s] had not been issued such [status] nor has counsel for the claimant[s] attempted to supplement the record with any notice of change in .. . status. The work authorization form as noted "may never be given retroactive effect for any purpose."
We have reviewed carefully the arguments raised by claimants in their brief, and at oral argument, and find that the Board decision is supported by sufficient credible evidence on the record as a whole, and that all issues of law raised are *221 clearly without merit. R. 2:11-3(e)(1)(D), (E); Esparza v. Valdez, supra. In agreeing for substantially the reasons set forth by the Board, we note that its decision is entitled only to substantial, but not dispositive deference, giving due regard to its expertise. See In re Application of Saddle River, 71 N.J. 14, 24, 362 A.2d 552 (1976); In re Meadowlands Communications Systems, Inc., 175 N.J. Super. 53, 65, 417 A.2d 575 (App. Div. 1980), certif. den., 85 N.J. 455, 427 A.2d 556 (1980). Here its opinion was consistent with the double thrust of the New Jersey statute N.J.S.A. 43:21-4(i)(1) and with an express directive of the United States Department of Labor (See DOL Unemployment Insurance Program Letter No. 1-86, February 16, 1989; No. 12-87, September 28, 1988), under whose supervision the unemployment compensation program is conducted, as well as with federal case precedent. Esparza, supra; Sudomir v. McMahon, 767 F.2d 1456 (9th Cir.1985). Holley v. Lavine, 553 F.2d 845 (2nd Cir.1977), cert. den., 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978), is not here applicable because claimant there directly received an express INS assurance that she would not be deported until her children reached majority.
In the face of those federal interpretations of applicable federal authority and the unique federal-state roles in funding and administering the unemployment benefits program, we believe that if a policy determination is to be made to march to the different drum beat of California and Texas decisions (See In The Matter of Lorenzo, Decision No. P-B-460, California Unemployment Insurance Appeals Board (1988); In the Matter of Encalada, Appeal No. 88-06482-10-051888, Texas Employment Comm'n (1988)), it should be a legislative determination. Specifically we agree with and adopt the argument that the Federal Unemployment Tax Act, 26 U.S.C.A. § 3304, does not contemplate that each state employment service shall separately set about to interpret federal immigration law.
Affirmed.
NOTES
[1] The record is not clear as to their relationship, but suggests that Carolina may be Mario's aunt.