580 So.2d 146 (1991)
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Petitioner,
v.
Luisa SOLIS, Respondent.
No. 75553.
Supreme Court of Florida.
May 16, 1991.
*147 Robert A. Butterworth, Atty. Gen., Louis F. Hubener, Asst. Atty. Gen., Tallahassee, and Scott D. LaRue, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for petitioner.
Valory Greenfield and Paulette Ettachild of Legal Services of Greater Miami, Inc., for respondent.
Stuart M. Gerson, Asst. Atty. Gen., Dexter W. Lehtinen, U.S. Atty., William Kanter and Frank A. Rosenfeld, Civil Div., Appellate Staff, Dept. of Justice, Washington, D.C., amicus curiae for U.S.
Thomas Eugene Zamorano, Miami, amicus curiae for The Miami Coalition Of The Care To The Homeless.
Victor Panoff, West Palm Beach, Ira J. Kurzban of Kurzban, Kurzban & Weinger, P.A., Miami, amicus curiae for The American Immigration Lawyers Ass'n.
McDONALD, Judge.
The Florida Department of Health and Rehabilitative Services (HRS) petitions this Court to review Solis v. Department of Health & Rehabilitative Services, 546 So.2d 1073, 1075 (Fla. 3d DCA 1989), in which the district court certified the following question as being of great public importance:
Whether an alien residing in this country pending her application for political asylum is eligible for AFDC benefits as one "permanently residing in the United States under color of law" within the meaning of section 409.026, Florida Statutes.
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. On the facts of the instant case we answer the certified question in the affirmative and approve the district court's opinion.
Luisa Solis and her five children, all Nicaraguan nationals, entered the United States illegally on June 26, 1985. The following day the Immigration and Naturalization Service (INS) issued identification cards and work authorization documents to them. Solis applied for asylum in September 1985. In February 1988 she applied to HRS for medicaid and aid to families with dependent children (AFDC) funds pursuant to section 409.026, Florida Statutes (1987).[1] HRS granted medical payments, but denied AFDC funds. An administrative hearing officer affirmed HRS' actions and found asylum applicants ineligible for AFDC benefits. The district court found Solis and her children to be "permanently residing in the United States under color of law" (PRUCOL), as provided in subsection 409.026(1), reversed the hearing officer's decision, and certified its question.
In deciding the instant case the district court relied on its decision in Alfred v. Florida Department of Labor & Employment Security, 487 So.2d 355 (Fla. 3d DCA 1986). Alfred considered the eligibility of *148 Haitians for unemployment benefits under subsection 443.101(7), Florida Statutes (1985), which includes the same PRUCOL language[2] as subsection 409.026(1). The district court found five of the Alfred appellants PRUCOL, even though they had not applied for either asylum or residency, based on Holley v. Lavine, 553 F.2d 845 (2d Cir.1977), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978).
Holley, a Canadian national, resided illegally in the United States with her minor children, who were citizens of the United States. New York denied her request for AFDC benefits, based on a state statute making aliens unlawfully residing in this country ineligible for such benefits. The INS, however, had notified state social services by letter that it did not contemplate forcing Holley to leave the United States at that time. The federal circuit court found Holley to be permanently residing under color of law and, thus, eligible for the requested benefits.
In reaching its decision the Holley court decided that INS' discretionary refusal to enforce its power to deport an alien constituted action under color of law. To define "permanently residing," the court relied on the congressional definition of "permanent":
The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.
8 U.S.C. § 1101(a)(31) (1982). The court found Holley to be permanently residing in the United States because, even though she could be deported, the reality was that she would not be.[3] "Permanently," therefore, does not mean "forever," but, rather means an indefinite period of time.
Solis relies heavily on Holley, but HRS argues that that case is so distinguishable factually that it should not control the instant case. Instead, HRS and the United States Department of Health and Human Services (HHS) claim that the instant case should be controlled by Sudomir v. McMahon, 767 F.2d 1456 (9th Cir.1985). In Sudomir the court found illegal aliens residing in California and who had applied for political asylum ineligible for AFDC payments because they were not permanently residing in this country under color of law. HHS argued in Sudomir that for an alien to be PRUCOL INS must determine that the alien is (1) legitimately present in this country (2) for an indefinite period of time. Therefore, according to HHS, asylum applicants are not PRUCOL because INS has not sanctioned their presence officially and has made no official determination that they may remain indefinitely. The court agreed and stated:
A residence is temporary when the alien's continued presence is solely dependent upon the possibility of having his application for asylum acted upon favorably. Aliens who have official authorization to remain indefinitely until their status changes reside permanently; asylum applicants who merely participate in a process that gives rise to the possibility of such an authorization reside temporarily.
767 F.2d at 1462 (footnote omitted, emphasis *149 in original).[4]
Sudomir is in accordance with HHS policy, and both HRS and HHS argue that we should defer to agency policy and agency interpretations of that policy. Thus, we are urged simply to approve HRS' policy of granting medicaid but not AFDC benefits to asylum applicants and to adhere to the agencies' interpretation of the PRUCOL language. We recognize that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782-83, 81 L.Ed.2d 694 (1984). In the instant case, however, we find the factual reality of agency practice controlling.
When Solis and her children entered this country, INS registered them. Their INS cards have typed on the back, "Subject to depart the U.S. by 7-27-85 McAllen Station" and, also on the back, bear the stamped words "Employment authorized thru" with "09/05/88" handwritten. On the front, all of the cards have stamped "Under Docket Control at HLG," and on the back of Solis' card "To depart July 27, 1988" is handwritten. The record also contains copies of the family's social security cards. At the administrative hearing[5] Solis testified that INS had never contacted her and her children regarding the July 1985 departure date and had taken no action on her almost three-year-old application for asylum.
At the administrative hearing Solis put into the record, without objection, the deposition of a twenty-seven-year INS employee. In this deposition the INS employee, when asked if asylum applicants were allowed to remain in the United States, answered: "Generally, yes. Almost always. I can't think of any reason right now that we would move [to deport] unless it was an absolute threat to public safety." He also stated that asylum applicants are known to the INS, that there is no upper limit on how long it takes to process an asylum application, and that it could take as long as thirty years. The HRS representative who testified at the administrative hearing stated that she was aware that INS was not deporting Nicaraguans.
INS controls immigration. It knew of the presence of Solis and her children in this country. It could have acted on their application for asylum and moved toward deporting them, but it did not. Their presence, therefore, must be construed as being under color of law because INS knew of it and acquiesced in it. Accord Lapre v. Department of Employment Security, 513 A.2d 10 (R.I. 1986); Gillar v. Employment Division, 300 Or. 672, 717 P.2d 131 (1986); Cruz v. Commissioner of Public Welfare, 395 Mass. 107, 478 N.E.2d 1262 (1985); Antillon v. Department of Employment Security, 688 P.2d 455 (Utah 1984).
Unlike the word "permanent," Congress has not defined the word "temporary." "Temporary" and "temporarily," however, are used in 8 U.S.C. § 1101(a)(15) in reference to students, tourists, business visitors, and specific workers. As stated in the dissent to Sudomir: "The common characteristics of all these temporary relationships is that they exist for a defined purpose with a defined end, and there is never any intention of abandoning the country of origin as home." 767 F.2d at 1467 (Canby, J., dissenting). Solis, on the other hand, is seeking asylum in this country and, apparently, has no intention of returning to Nicaragua. Moreover, an asylum applicant is present in the United States with no defined end or defined purpose as set out by Congress regarding temporary aliens. The status of the Solis family will not change until the family chooses to leave this country *150 or INS acts on the application for asylum. Thus, Solis and her children fit within the statutory definition of "permanent" better than within the statutory use of "temporary," accord Gillar, and we find that they are permanently residing within the United States. Therefore, we agree with the district court that Solis and her family fit within the PRUCOL language of subsection 409.026(1), and we approve that court's decision.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Paragraph (1) of § 409.026, Fla. Stat. (1987), provides:

The department shall conduct, supervise, and administer all social and economic services within the state which are or will be carried on by the use of federal or state funds or funds from any other source and receive and distribute food stamps and commodities donated by the United States or any agency thereof. The department shall determine the benefits each applicant or recipient of assistance is entitled to receive under this chapter, provided that each such applicant or recipient is a resident of this state and is a citizen of the United States or is an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law.
[2] § 443.101(7), Fla. Stat. (1985), provided, in pertinent part, that an alien could not receive unemployment benefits "unless such alien ... otherwise is permanently residing in the United States under color of law."
[3] Several jurisdictions have applied the expansive interpretation of PRUCOL set out in Holley v. Lavine, 553 F.2d 845 (2d Cir.1977), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). E.g., Berger v. Heckler, 771 F.2d 1556 (2d Cir.1985) (supplemental security income benefits); Industrial Comm'n v. Arteaga, 735 P.2d 473 (Colo. 1987) (unemployment benefits); Cruz v. Commissioner of Pub. Welfare, 395 Mass. 107, 478 N.E.2d 1262 (1985) (medicaid); St. Francis Hosp. v. D'Elia, 71 A.D.2d 110, 422 N.Y.S.2d 104 (App.Div. 1979) (medical assistance), aff'd 53 N.Y.2d 825, 422 N.E.2d 830, 440 N.Y.S.2d 185 (1981); Gillar v. Employment Div., 300 Or. 672, 717 P.2d 131 (1986) (unemployment benefits); Lapre v. Department of Employment Sec., 513 A.2d 10 (R.I. 1986) (unemployment benefits); Antillon v. Department of Employment Sec., 688 P.2d 455 (Utah 1984) (unemployment benefits).
[4] Few jurisdiction have followed the restrictive interpretation of PRUCOL set out in Sudomir v. McMahon, 767 F.2d 1456 (9th Cir.1985). E.g., Esparza v. Valdez, 612 F. Supp. 241 (D.Colo. 1985) (unemployment benefits), aff'd, 862 F.2d 788 (10th Cir.1988), cert. denied, 492 U.S. 905, 109 S.Ct. 3214, 106 L.Ed.2d 565 (1989); Zurmati v. McMahon, 180 Cal. App.3d 164, 225 Cal. Rptr. 374 (Ct.App. 1986) (AFDC benefits); Brambila v. Board of Review, 241 N.J. Super. 216, 574 A.2d 992 (Super.Ct.App.Div.) (unemployment benefits), certification granted, 122 N.J. 376, 585 A.2d 381 (1990).
[5] Held on July 7, 1988.