705 So.2d 704 (1998)
Jose LISBOA, Appellant,
v.
DADE COUNTY PROPERTY APPRAISER, Dade County Tax Collector, and Florida Department of Revenue, Appellees.
No. 97-874.
District Court of Appeal of Florida, Third District.
February 11, 1998.
*705 Sherene Persad and Pierce Rivera, Certified Legal Interns, and Brion Blackwelder, for appellant.
Robert Ginsburg and Melinda S. Thornton, Miami, for appellees.
Before FLETCHER, SHEVIN and SORONDO, JJ.
SORONDO, Judge.
Jose Lisboa, an applicant for political asylum, appeals the denial of his homestead tax exemption. He argues that he should be considered a permanent resident for purposes of exemption from ad valorem taxation.
Lisboa is a legal immigrant whose political asylum application is pending with the Immigration and Naturalization Service (INS). His immigration status is known as "permanently residing under the color of law" (PRUCOL). He has lived in Miami, Florida since he arrived in the United States and owns a condominium. On March 3, 1995, Lisboa applied for the homestead tax exemption. He was denied because, according to the Dade County Property Appraiser (Appraiser), he did not satisfy the permanent residence requirement necessary to qualify for homestead exemption.
The homestead tax exemption is granted by the Florida Constitution to any person who in "good faith" makes Florida their permanent state of residence. The Appraiser regards a PRUCOL as a temporary resident and therefore ineligible for the homestead exemption. However, the Appraiser considers an alien with the "lawfully admitted permanent resident" status (LAPR) to be permanent for purposes of the exemption.
PRUCOLs and LAPRs are similar in that they are both legal aliens, reside with the knowledge and permission of INS, for an indefinite period of time, and without intentions of returning to their own country. A difference between them is that a PRUCOL may not travel freely outside the United States, and it is harder for the INS to revoke a LAPR's status. The INS defines a PRUCOL's status as permanent and as a relationship of continuing nature, as opposed to temporary, even though their status may eventually be dissolved. A PRUCOL has the right to live and work in the United States while their application is pending.
*706 In July of 1996, Lisboa filed suit against the Appraiser, requesting eligibility for the homestead tax exemption and to enjoin the Appraiser from denying exemptions based on his immigration status. Lisboa sought summary judgment, claiming that he was a permanent resident and is entitled to homestead tax exemption. The Appraiser argued that an alien must be classified as a LAPR in order to be entitled to the homestead tax exemption. The trial court denied the motion for summary judgment. Both sides stipulated that on the basis of the court's denial of summary judgment for Lisboa, no issues remained to be decided. A stipulated Summary Final Judgment in favor of the Appraiser was entered and Lisboa appeals.
Lisboa first argues that Florida's homestead tax exemption is a constitutional right and that the Appraiser's denial of his application for the exemption amounts to a denial of that right. We do not agree. In Horne v. Markham, 288 So.2d 196 (Fla.1973), the Florida Supreme Court stated:
Appellant's contention that he has an absolute right to a homestead exemption is without merit ... Article VII, Section 6, of the Constitution of the State of Florida,... does not establish an absolute right to a homestead exemption. Rather, it clearly provides that taxpayers who otherwise qualify shall be granted an exemption only "upon establishment of right thereto in the manner prescribed by law".

Id. at 199. We further find no merit to his claim that the Appraiser's decision has violated his equal protection right under the federal constitution. A preliminary step in an equal protection analysis is the determination that others, similarly situated, were subject to disparate treatment. Johnson v. Smith, 696 F.2d 1334 (11th Cir.1983); Battaglia v. Adams, 164 So.2d 195 (Fla.1964); Silver Blue Lake Apartments, Inc. v. Silver Blue Lake Home Owners Asso., Inc., 225 So.2d 557 (Fla. 3d DCA 1969). Lisboa has not made such a claim in this case. Indeed, the record is clear that the Appraiser has taken the position that all immigrants with a PRUCOL status are ineligible for the exemption.
The central question presented in this case is whether, as a matter of Florida law, an applicant for political asylum whose application is pending as of the relevant taxing date, is a "permanent resident" for purposes of Florida's homestead exemption from ad valorem taxation. Based upon our review of Florida law, as well as the expert testimony presented below on the current status of United States immigration law, we answer this question in the affirmative.
For purposes of our analysis we begin with a discussion of the relevant state and federal statutes. The ad valorem exemption of the Florida Constitution is implemented within Chapter 196, Florida Statutes. The exemption privilege itself is set forth in section 196.031(1), Florida Statutes. In pertinent part it reads:
Every person who, on January 1, has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his or her permanent residence ... is entitled to an exemption ...
Section 196.012(17) and (18), Florida Statutes, define the terms "permanent resident" and "permanent residence" in pertinent parts, as follows:
(17) "Permanent resident" means a person who has established a permanent residence as defined in subsection (18).
(18) "Permanent residence" means that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning.
Under this definition, we have no doubt that Lisboa fully qualifies for the exemption. It is clear, however, that the parties felt that United States immigration laws have an impact on the definition of permanent residency where an alien seeks the benefit of exemption from ad valorem taxation. We therefore include in our analysis a review of the applicable federal statute.
For purposes of federal immigration law, the term "permanent" is defined at 8 U.S.C. § 1101(a)(31) as follows:
The term "permanent" means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it *707 is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.
Although different, it is clear that the federal definition of "permanent" is as permissive, if not more so, than the state definition of "permanent resident."
In Department of Health and Rehabilitative Services v. Solis, 580 So.2d 146 (Fla. 1991), the Florida Supreme Court held that an alien residing in the United States pending her application for political asylum was eligible for AFDC benefits as one "permanently residing in the United States under color of law" within the meaning of section 409.026, Florida Statutes. In analyzing the word "permanent," the Court distinguished it from the word "temporary" as used in federal statutes. The Court stated:
Unlike the word "permanent," Congress has not defined the word "temporary." "Temporary" and "temporarily," however, are used in 8 U.S.C. Sec. 1101(a)(15) in reference to students, tourists, business visitors, and specific workers. As stated in the dissent to Sudomir:[1] "The common characteristics of all these temporary relationships is that they exist for a defined purpose with a defined end, and there is never any intention of abandoning the country of origin as home."
Solis at 149 (footnote added). Lisboa is seeking asylum in this country and has no intention of returning to Brazil. As the Supreme Court noted in Solis, "an asylum applicant is present in [this country] with no defined end or defined purpose as set out by Congress regarding temporary aliens." Id. (emphasis added). As in Solis, "the status of [Lisboa] will not change until [he] chooses to leave this country or INS acts on the application for asylum." Id. Accordingly, like Mrs. Solis, we find that Mr. Lisboa fits more appropriately within the definition of "permanent."
The Appraiser first argues that this court is compelled to affirm the lower court's ruling by the Florida Supreme Court's decision in Juarrero v. McNayr, 157 So.2d 79 (Fla. 1963), and our own decision in Alcime v. Bystrom, 451 So.2d 1037 (Fla. 3d DCA 1984). A review of those decisions is necessary.
In Juarrero, the Court articulated the controlling question in the case as follows:
Can an alien, temporarily absent from his homeland because of political persecution, and residing in this country for an indefinite stay by warrant of a temporary visa, make Florida in good faith his permanent home?
Id. at 80. In that case the alien was a Cuban refugee who had applied for political asylum. As in this case, Juarrero had applied for and been denied the homestead ad valorem tax exemption provided by the Florida Constitution. The Court held that because Juarrero was in this country on a "temporary" visa he could not "legally, rightfully or in good faith make or declare an intention which he has no assurance he can fulfill or carry out because of the temporary nature of the visa." Id. at 81. Based on the testimony of the expert witness presented below, it is clear that the immigration policies of the United States have changed considerably since Juarrero was decided. Most significant is the fact that Mr. Juarrero's visa today would not be of a temporary nature. Indeed, like Mr. Lisboa, Juarrero's status would be that of one "permanently residing under color of law." Consequently, we do not find that our decision today is in conflict with Juarrero. Likewise, in Alcime, we held that because Mr. Alcime was an alien without a permanent visa he was ineligible for a homestead exemption from ad valorem taxes. As has been discussed above, in the present case Mr. Lisboa has a "permanent" status. The fact that his status can be "dissolved eventually at the instance either of the United States or of the individual" does not detract from its permanency. 8 U.S.C. § 1101(a)(31).
The Appraiser further argues that the cases relied upon by Lisboa all deal with eligibility for a variety of social service programs which require the recipient to be permanently residing in the United States under color of law.[2] This reasoning, the argument *708 goes, should not be applied to homestead exemption benefits, which, like all tax exemptions, should be strictly construed. We disagree with this argument for two reasons. First, we believe the reasoning of Solis, as set forth above, requires this result. Second, it seems unjust to us that an alien who by misfortune finds himself or herself in need of government assistance, should be designated a "permanent resident" and thereby eligible for social service benefits, while another alien who is self-supporting and a tax-paying resident of this country should be deemed to be less than "permanent" for tax-exemption benefits.
Because of the potential impact of this decision, we certify the following question to the Florida Supreme Court as one of great public importance:
Can an alien residing in the United States pending his application for political asylum, satisfy the residency requirements contained within Article VII, Section 6 of the Florida Constitution and section 196.031(1), Florida Statutes, in order to qualify for Florida's homestead tax exemption?
The final summary judgment entered on behalf of the Appraiser is reversed. This case is remanded with instructions to enter a final summary judgment in favor of Lisboa.
NOTES
[1] Sudomir v. McMahon, 767 F.2d 1456 (9th Cir. 1985).
[2] See Holley v. Lavine, 553 F.2d 845 (2d Cir. 1977), cert. denied, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978); see also Department of Health and Rehabilitative Services v. Solis, 580 So.2d 146, 148 n. 3 (Fla.1991)(cases cited therein).