808 So.2d 237 (2002)
Sam O. HALE, and his Wife, Emily Hale, Appellants,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Appellee.
No. 1D00-4450.
District Court of Appeal of Florida, First District.
January 18, 2002.
*239 H. Guy Green, Green Law Firm, Marianna, for Appellants.
Robert A. Butterworth, Attorney General, and John Mika, Assistant Attorney General, The Office of the Attorney General, Tallahassee, for Appellee.
POLSTON, J.
Appellants Sam O. Hale and Emily Hale brought this action against appellee Department of Revenue, State of Florida, seeking a declaratory judgment and injunctive relief that they are not subject to audit or sales taxes pursuant to Chapter 212, Florida Statutes. The trial court entered final summary judgment in favor of the Department, ruling that the rental income from apartments leased by the Hales was not entitled to an exemption from sales tax, and the Hales are subject to audit. Because we do not agree with the legal analysis by the trial court relating to the Hales' claimed exemption from sales tax, we reverse and remand.

I.
The Hales lease rental units, known as the Edgewood Apartments, on a month-to-month basis, using a written lease agreement. The trial court reviewed section 212.03, Florida Statutes (1997), and interpreted it to require a lease "in excess of six months" or tenants who were "full-time students or military personnel" to receive an exemption from sales tax on rental income. Because the Hales use a month-to-month lease instead of one that exceeds six months, and do not claim an exemption for tenants who are students or military personnel, the trial court ruled that the Hales are not entitled to an exemption under section 212.03.
The Hales argue that they are exempt pursuant to the last sentence of section 212.03(7)(a). Section 212.03(7), Florida Statutes (1997) states:
(7)(a) Full-time students enrolled in an institution offering postsecondary education and military personnel currently on active duty who reside in the facilities described in subsection (1) shall be exempt from the tax imposed by this section. The department shall be empowered to determine what shall be deemed acceptable proof of fulltime enrollment. The exemption contained in this subsection shall apply irrespective of any other provisions of this section. The tax levied by this section shall not apply to or be imposed upon or collected on the basis of rentals to any person who resides in any building or group of buildings intended primarily for lease or rent to persons as their permanent or principal place of residence.
(b) It is the intent of the Legislature that this subsection provide tax relief for persons who rent living accommodations *240 rather than own their homes, while still providing a tax on the rental of lodging facilities that primarily serve transient guests.
(c) The rental of facilities, as defined in s. 212.02(10)(f) [defining trailer camp, mobile home park, or recreational vehicle park], which are intended primarily for rental as a principal or permanent place of residence is exempt from the tax imposed by this chapter. The rental of such facilities that primarily serve transient guests is not exempt by this subsection. In the application of this law, or in making any determination against the exemption, the department shall consider the facility as primarily serving transient guests unless more than half of the total rental units available are occupied by tenants who have a continuous residence in excess of 3 months.
(d) The rental of living accommodations in migrant labor camps is not taxable under this section. "Migrant labor camps" are defined as one or more buildings or structures, tents, trailers, or vehicles, or any portion thereof, together with the land appertaining thereto, established, operated, or used as living quarters for seasonal, temporary, or migrant workers.
Emphasis added.
The Department argues that sections 212.03(1) and 212.03(4) (providing an exemption for any person who rents to others using a written lease for longer than six months) should be read in pari materia with 212.03(7)(a) to require a six month written lease for an exemption under (7)(a). The Department argues that a tenant's length of stay demonstrates when a facility is intended as a "permanent or principal place of residence."
We do not read (7)(a) to require a written lease exceeding six months. Had the Legislature intended to require a specified time for "permanent or principal place" of residency, it could have plainly done so as it did in (7)(c)(providing a three-month residency requirement to more than half of the total rental units available). There is no such requirement in 7(a). See Robbins v. Welbaum, 664 So.2d 1, 2 (Fla. 3d DCA 1995)(rejecting argument for a minimum time period requirement for a claimant to hold an interest in property before being deemed to hold beneficial title for homestead exemption purposes; the court stated that neither the statute nor the constitution places such a time limit on beneficial title). Moreover, 7(b) explicitly provides, without any limiting language, that subsection 7 is intended to provide tax relief "for persons who rent living accommodations rather than own their homes," while taxing transient rentals.
The Hales argued that the trial court misinterpreted the last sentence of 7(a) to modify the exemption for full-time students and military personnel as provided in the first sentence of 7(a). Although we do not read the trial court's judgment to rule in that manner, nor do we understand the Department to make that argument, we agree with the Hales that a plain reading of 7(a) and its legislative history supports the treatment of the last sentence as a separate exemption. Had the Legislature intended to modify the first sentence of 7(a), it could have plainly done so. An interpretation requiring full-time students and military personnel to consider their rented living accommodations as their permanent or principal place of residence would render the exemption for students and military personnel virtually meaningless. The legislative history of 7(a) shows that the Legislature intended otherwise.
The last sentence of 7(a) and 7(b) were enacted together in 1971. See Ch. 71-986, § 1, at 90, Laws of Fla. The first sentence *241 of 7(a) was added later in 1979, along with the provision that the "exemption contained in this subsection shall apply irrespective of any other provisions of this section." See Ch. 79-359, § 2, at 1840, Laws of Fla. This history indicates that the Legislature did not intend to modify the exemption for full-time students and military personnel.
We rule that the last sentence of 7(a) provides a separate exemption within section 212.03, without a requirement for a written lease exceeding six months. The parties disagree as to the meaning of the statutory language of the last sentence of 7(a), which is not defined by statute or rule. Is Edgewood Apartments intended primarily for lease to persons as their permanent or principal place of residence?

II.
The Hales argue that 7(a) refers to their intent, as landlord, and the Department argues that 7(a) refers to the tenants' intent. Both are right. The landlord determines who the apartments will be leased to, and the tenants determine whether their apartment will be their permanent or principal place of residence. Both must be considered in applying the exemption in 7(a).

A.
We first examine the language used in 7(a) to describe the requisite intended type of tenants (those whose apartments will be their permanent or principal place of residence). "Permanent or principal place of residence," as used in this exemption statute, means the same as "domicile" or "legal residence." See Latta v. Latta, 654 So.2d 1043, 1044 (Fla. 1st DCA 1995)("`Domicile' is `that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning.' Black's Law Dictionary 435 (5th ed. 1979)"); Bloomfield v. City of St. Petersburg Beach, 82 So.2d 364, 368 (Fla.1955)("legal residence" or "domicile" means a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time; it is the "place an individual has set up his household goods and made the chief seat of his affairs and interests, from which, without some special avocation, he has no intention of departing; from which, when he has departed, he is considered to be away from home, and to which, when he has returned, he is considered to have returned home."); Keveloh v. Carter, 699 So.2d 285, 288 (Fla. 5th DCA 1997)("A legal residence or `domicile' is the place where a person has fixed an abode with the present intention of making it his or her permanent home.").
The existence of a month-to-month lease is a factor to be considered when determining a tenant's domicile intent, but does not control the outcome. For example, in Lisboa v. Dade County Property Appraiser, 705 So.2d 704 (Fla. 3d DCA 1998), the court addressed whether an applicant for political asylum qualified for a homestead exemption. The applicant, to qualify for the exemption, must have established a permanent residence. Section 196.012(18), Florida Statutes, defines "permanent residence" as "that place where a person has his or her true, fixed, and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning." Id. at 706. The court held that the applicant had a permanent residence, notwithstanding that his status could be dissolved eventually at the instance of either the United States or of the individual. Id. at 707. Likewise, in this case, even though the monthly lease could be terminated at any time by either the landlord or tenant, the tenant may have a permanent residence.
The establishment of one's residence usually depends on a "variety of acts *242 or declarations all of which must be weighed in the particular case as evidence would be weighed upon any other subject." Bloomfield, 82 So.2d at 369. See also Perez v. Marti, 770 So.2d 284, 290 (Fla. 3d DCA 2000)("Legal residence consists of concurrence of both fact and intention, and thus, mere intention to acquire new domicile without fact of actual removal avails nothing; neither does fact of removal without intention.").

B.
Next, we review the statutory language describing the landlord's intent. As discussed above, whether an apartment is a tenant's domicile is a factual determination. Whether Edgewood Apartments is intended primarily for lease to tenants as their domicile is also a factual determination, based on the Hales' intent. In determining the Hales' intent from the evidence presented, the court may consider the use of month-to-month lease agreements.
"Primarily," as used in 7(a), is not defined by statute or rule. The Legislature could have required at least 50% of the leased units to have domiciled tenants. Although such a definition would reasonably provide a bright-line test, the Legislature did not choose to use that language.[1]
In Advisory Opinion to the Governor-1996 Amendment 5 (Everglades), 706 So.2d 278, 282 (Fla.1997), the Florida Supreme Court construed the phrase "primarily responsible," as used in Amendment 5, by using the plain meaning of the word "primarily" from dictionaries. Stating that "primarily" means "fundamentally," "in the first place," "for the most part," "chiefly," "principally," or "mainly," the Court noted that the dictionary does not restrict the word "primarily" to mean "entirely" or "substantially" or "more than half." Id.
Similarly, the court in Aitken v. Markham, 595 So.2d 159 (Fla. 4th DCA 1992), construed "primarily" when presented with a claim to classify land as agricultural for ad valorem taxation purposes. Only lands which are used primarily for bona fide agricultural purposes are entitled to receive such classification. "Primarily" was construed by the court to mean "that the agricultural use must be the most significant activity on the land where the land supports diverse activities." Id. at 161.
Accordingly, we construe the term "primarily" in 7(a) to mean that the principal, or most significant, use of Edgewood Apartments must be for tenants domiciled there. Although this definition may not be as helpful to the trial court as a more precise 50% test in making the factual determination, the Legislature rather than the court, must provide any further refinement in the law.
If it is determined that the Hales intended to primarily rent Edgewood Apartments to tenants domiciled there, then the Hales are entitled to an exemption under 7(a) for rentals to any persons residing there. The landlord's intent relates to the type of tenants leased to in the building or group of buildings as a whole, not on an individual basis. For example, a building intended primarily for rent to transient guests as a whole, such as a hotel, would not qualify for this exemption even though there may be one person who makes it their permanent or principal place of residence.

III.
We reverse and remand to the trial court for further proceedings to determine *243 whether the Hales are entitled to the exemption provided by section 212.03(7)(a), and thus whether they are subject to audit. The Hales do not contest that the Department has authority to examine their records to the extent necessary to determine whether the Hales qualify for the exemption. See § 213.34, Fla. Stat. (1997)(the Department has authority to conduct audits of taxpayers and to request information from taxpayers to ascertain their tax liability, if any).
REVERSED and REMANDED.
BARFIELD and MINER, JJ., concur.
NOTES
[1] Compare 7(a)(use of the word "primarily") with 7(c)(requiring "more than half of the total rental units available" to be occupied by tenants with a continuous residence of at least 3 months).